# **<u>EXHIBIT K</u>**



THE CITY OF NEW YORK

# OFFICE OF LABOR RELATIONS

### 40 Rector Street, New York, NY 10006-1705
http://nyc.gov/olr

*JAMES F. HANLEY*
*Commissioner*

TO:        HEADS OF CONCERNED CITY DEPARTMENTS AND AGENCIES

FROM       JAMES F. HANLEY, COMMISSIONER

SUBJECT:   EXECUTED CONTRACT: **Motor Vehicle Operators**

TERM:      MARCH 3, 2008 – MARCH 2, 2010

Attached for your information and guidance is a copy of the executed contract entered into by the Commissioner of Labor Relations on behalf of the City of New York and District Council 37 on behalf of the incumbents of positions listed in Article I of said contract.

The contract incorporates terms of an agreement reached through collective bargaining negotiations and related procedures.

DATED: April 18, 2012

OFFICE OF LABOR RELATIONS
REGISTRATION
OFFICIAL          CONTRACT

NO: 12006                    DATE: April 18, 2012

DEF000097

## 2008-2010 Motor Vehicle Operators Agreement

### TABLE OF CONTENTS

ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION ..................................................2

ARTICLE II - DUES CHECKOFF ..................................................3

ARTICLE III - SALARIES ..................................................3

ARTICLE IV - WELFARE FUND ..................................................16

ARTICLE V - PRODUCTIVITY AND PERFORMANCE ..................................................16

ARTICLE VI - PRODUCTIVITY BY AGENCY ..................................................18

ARTICLE VII - GRIEVANCE PROCEDURE ..................................................23

ARTICLE VIII - BULLETIN BOARDS: EMPLOYER FACILITIES ..................................................30

ARTICLE IX - NO STRIKES ..................................................30

ARTICLE X - CITYWIDE ISSUES ..................................................30

ARTICLE XI - UNION ACTIVITY ..................................................30

ARTICLE XII - LABOR-MANAGEMENT COMMITTEE ..................................................30

ARTICLE XIII - FINANCIAL EMERGENCY ACT ..................................................31

ARTICLE XIV - APPENDICES ..................................................31

ARTICLE XV - SAVINGS CLAUSE ..................................................31

ARTICLE XVI - CONTRACTING-OUT CLAUSE ..................................................31

ARTICLE XVII - WORK SHIFTS AND SENIORITY ..................................................32

ARTICLE XVIII - CORPSMAN AND EMERGENCY MEDICAL SERVICE SPECIALIST ..................................................32

APPENDIX A

APPENDIX B

12006
DEF000098

**AGREEMENT** entered into this 18 day of April , 2012 by and between the **City of New York** and related public employers pursuant to and limited to their respective elections or statutory requirement to be covered by the New York City Collective Bargaining Law and their respective authorizations to the City to bargain on their behalf and the **New York City Health and Hospitals Corporation** (hereinafter referred to jointly as the "Employer"), and **District Council 37**, A.F.S.C.M.E., AFL-CIO (hereinafter referred to as the "Union"), for the twenty-four (24) month period from March 3, 2008 to March 2, 2010.

W I T N E S S E T H :

**WHEREAS,** the parties hereto have entered into collective bargaining and desire to reduce the results thereof to writing,

**NOW, THEREFORE,** it is mutually agreed as follows:

**ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION**

<u>**Section 1.**</u>

The Employer recognizes the Union as the sole and exclusive collective bargaining representative for the bargaining unit set forth below, consisting of employees of the Employer, wherever employed, whether full-time, part-time per annum, hourly or per diem, in the below listed title(s), and in any successor title(s) that may be certified by the Board of Certification of the Office of Collective Bargaining to be part of the unit herein for which the Union is the exclusive collective bargaining representative and in any positions in Restored Rule X titles of the Classified Service the duties of which are or shall be equated by the City Personnel Director and the Director of the Budget for salary purposes to any of the below listed title(s):

| | |
|---|---|
| 91212 | Motor Vehicle Operator |
| 03821 | Motor Vehicle Operator (OTB) |
| 91232 | Motor Vehicle Supervisor |
| 05541 | Motor Vehicle Supervisor (OTB) |
| 91233 | Senior Motor Vehicle Supervisor |
| 71651 | Traffic Enforcement Agent (Level III) |
| 71651 | Traffic Enforcement Agent (Level IV) |

<u>**Section 2.**</u>

The terms "Employee" and "Employees" as used in this Agreement shall mean only those persons in the unit described in Section 1 of this Article.

## ARTICLE II - DUES CHECKOFF

### Section 1.

a.    The Union shall have the exclusive right to the checkoff and transmittal of dues on behalf of each employee in accordance with the Mayor's Executive Order No. 98, dated May 15, 1969, entitled "Regulations Relating to the Checkoff of Union Dues" and in accordance with the Mayor's Executive Order No. 107, dated December 29, 1986, entitled "Procedures for Orderly Payroll Check-Off of Union Dues and Agency Shop Fees."

b.    Any Employee may consent in writing to the authorization of the deduction of dues from the employee's wages and to the designation of the Union as the recipient thereof. Such consent, if given, shall be in a proper form acceptable to the City, which bears the signature of the Employee.

### Section 2.

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference into this Agreement.

## ARTICLE III - SALARIES

### Section 1.

a.    This Article III is subject to the provisions, terms and conditions of the Alternative Career and Salary Pay Plan Regulations, dated March 15, 1967 as amended, except that the specific terms and conditions of this Article shall supersede any provisions of such Regulations inconsistent with this Agreement subject to the limitations of applicable provisions of law.

b.    Unless otherwise specified, all salary provisions of this Agreement, including minimum and maximum salaries, advancement or level increases, general increases, education differentials and any other salary adjustments, are based upon a normal work week of 40 hours, except for Employees of the Health and Hospitals Corporation, whose normal work week is 37 1/2 hours. In accordance with Article IX, Section 24 of the 1995–2001 Citywide Agreement, an Employee who works on a full-time, per-diem basis shall receive their base salary (including salary increment schedules) and/or additions-to-gross payment in the same manner as a full-time, per-annum Employee.  An Employee who works on a part-time per annum basis and who is eligible for any salary adjustments provided in this Agreement shall receive the appropriate pro-rata portion of such salary adjustment computed on the relationship between the number of hours regularly worked each week by such Employee and the number of hours in the said normal work week, unless otherwise specified.

c.    Employees who work on a part-time per diem or hourly basis and who are eligible for any salary adjustment provided in this Agreement shall receive the appropriate pro-rata portion of such salary adjustment computed as follows, unless otherwise specified:

DEF000120 006

**Per diem rate -**      1/261 of the appropriate minimum basic salary.

**Hourly Rate -**      37-1/2 hour week basis - 1/1957.5 of the appropriate minimum basic salary.

40 hour week basis - 1/2088 of the appropriate minimum basic salary.

**d.**    The maximum salary for a title shall not constitute a bar to the payment of any salary adjustment or pay differentials provided for in this Agreement but the said increase above the maximum shall not be deemed a promotion.

## Section 2.

Employees in the following title(s) shall be subject to the following specified salary(ies), salary adjustment(s), and/or salary range(s):

**a.**    **Effective March 3, 2008**

i. Minimum

| Title | (1) Hiring Rate | (2) Incumbent Rate | (ii) Maximum |
|---|---|---|---|
| Motor Vehicle Supervisor | $40,871 | $47,002 | Flat Rate |
| Motor Vehicle Supervisor (OTB) | $40,871 | $47,002 | Flat Rate |
| Motor Vehicle Operator | | | |
| Motor Vehicle Operator (OTB) | | | |
| Starting Rate | $32,399 | $37,259 | |
| after 1 year | $33,493 | $38,517 | |
| after 2 years | | $39,786 | |
| after 3 years | | $40,476 | |
| Sr. Motor Vehicle Supervisor | $43,853 | $50,431 | Flat Rate |
| Traffic Enforcement Agent Level III | $33,370 | $38,376 | $40,904 |
| Hiring Rate | $33,370 | $38,376 | |
| after 1 year | $33,980 | $39,077 | |
| after 2 years | | $39,774 | |
| after 3 years | | $40,110 | |
| | | | |
| Traffic Enforcement Agent Level IV | $33,926 | $39,015 | $43,889 |
| Step 1 | $1,130 increase after 1 year | $1,300 increase after 1 year | |
| Step 2 | $566 increase after 2 years | $651 increase after 2 years | |

DEF000102 0 0 6

**b.**   **Effective March 3, 2009**

|  | i. Minimum | | |
|---|---|---|---|
| Title | (1) Hiring Rate | (2) Incumbent Rate | (ii) Maximum |
| Motor Vehicle Supervisor | $42,506 | $48,882 | Flat Rate |
| Motor Vehicle Supervisor (OTB) | $42,506 | $48,882 | Flat Rate |
| Motor Vehicle Operator | | | |
| Motor Vehicle Operator (OTB) | | | |
|     Starting Rate | $33,695 | $38,749 | |
|     after 1 year | $34,833 | $40,058 | |
|     after 2 years | | $41,377 | |
|     after 3 years | | $42,095 | |
| Sr. Motor Vehicle Supervisor | $45,607 | $52,448 | Flat Rate |
| Traffic Enforcement Agent Level III | $34,705 | $39,911 | $42,540 |
|     Hiring Rate | $34,705 | $39,911 | |
|     after 1 year | $35,339 | $40,640 | |
|     after 2 years | | $41,365 | |
|     after 3 years | | $41,714 | |
| | | | |
| Traffic Enforcement Agent Level IV | $35,283 | $40,576 | $45.645 |
|     Step 1 | $1,176 increase after 1 year | $1,352 increase after 1 year | |
|     Step 2 | $589 increase after 2 years | $677 increase after 2 years | |

## Section 3. - Wage Increases

**a.**   The general increases, effective as indicated, shall be:

    **i.**   Effective March 3, 2008, Employees shall receive a general increase of 4 percent.

    **ii.**   Effective March 3, 2009, Employees shall receive an additional general increase of 4 percent.

    **iii.**   Part-time per annum, part-time per diem Employees (including seasonal appointees), per session and hourly paid Employees and Employees whose normal work year is less than a full calendar year shall receive the increases provided in subsections 3(a)(i) and 3(a)(ii) on the basis of computations heretofore utilized by the parties for all such Employees.

**b.**   The increases provided for in Section 3(a) above shall be calculated as follows:

12006
DEF000102

    **i.**    The general increase in Section 3(a)(i) shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on March 2, 2008;

    **ii.**    The general increase in Section 3(a)(ii) shall be based upon the base rates (including salary or incremental salary schedules) of the applicable titles in effect on March 2, 2009;

**c.**

    **i.**    The general increases provided for in this Section 3 shall be applied to the base rates, incremental salary levels, and the minimum and maximum rates (including levels) and hiring rates, for the applicable titles.

    **ii.**    A general increase of 5.47%, effective on the last day of the Agreement, and consistent with the terms of the Stipulation of Settlement (A-13472-10; BCB 2864-10)   shall be applied to the following "additions to gross", uniform maintenance allowances, assignment differentials, service increments, longevity differentials, longevity increments, advancement increases, assignment (level) increases, and experience, certification, educational, license, evening, or night shift differentials.  Recurring increment payments are excluded from this provision.

**d.**    The step pay plan set forth in Section 2 of this Article III was initially established for employees assigned to Traffic Enforcement Agent Level III pursuant to the 1987-90 Equity Panel Report, dated July 1, 1989.

## Section 4. New Hires

**a.**    The following provisions shall apply to Employees newly hired on or after March 3, 2008:

    i. During the first two (2) years of service, the "appointment rate" for a newly hired employee shall be fifteen percent (15%) less than the applicable "incumbent minimum" for said title that is in effect on the date of such appointment as set forth in this *Agreement*. The general increases provided for in subsections 3(a)(i) and 3(a)(ii) shall be applied to the "appointment rate."

    ii. Upon completion of two (2) years of service such employees shall be paid the indicated "incumbent minimum" for the applicable title that is in effect on the two (2) year anniversary of their original date of appointment as set forth in this *Agreement*.

**b.**    For the purposes of Section 4(a) and 4(c), employees 1) who were in active pay status before March 3, 2008, and 2) who are affected by the following personnel actions after said date shall not be treated as "newly hired" employees and shall be entitled to receive the indicated minimum "incumbent rate" set forth in subsections 2(a)(i)(2) and 2(b)(i)(2) of this Article III:

DEF000**102** 0 0 6

i.      Employees who return to active status from an approved leave of absence.

ii.     Employees in active status (whether full or part-time) appointed to permanent status from a civil service list, or to a new title (regardless of jurisdictional class or civil service status) without a break in service of more than 31 days.

iii.    Employees who were laid off or terminated for economic reasons who are appointed from a recall/preferred list or who were subject to involuntary redeployment.

iv.    Provisional employees who were terminated due to a civil service list who are appointed from a civil service list within one year of such termination.

v.     Permanent employees who resign and are reinstated or who are appointed from a civil service list within one year of such resignation.

vi.    Employees (regardless of jurisdictional class or civil service status) who resign and return within 31 days of such resignation.

vii.   A provisional employee who is appointed directly from one provisional appointment to another.

viii.  For employees whose circumstances were not anticipated by the parties, the First Deputy Commissioner of Labor Relations is empowered to issue, on a case-by-case basis, interpretations concerning application of this Section 4. Such case-by-case interpretations shall not be subject to the dispute resolution procedures set forth in Article VI of this Agreement.

c.

i.      For a title subject to an incremental pay plan, the employee shall be paid the appropriate increment based upon the employee's length of service.

ii.     Employees who change titles or levels before attaining two years of service will be treated in the new title or level as if they had been originally appointed to said title or level on their original hiring date.

d.    The First Deputy Commissioner of Labor Relations may, after notification to the affected union(s), exempt certain hard to recruit titles from the provisions of subsection 4.

## Section 5.

Each general increase provided herein, effective as of each indicated date, shall be applied to the rate in effect on the date as specified in Section 3 of this Article. In the case of a promotion or other advancement to the indicated title on the effective date of the general increase specified in Section 3 of this Article, such general increase shall not be applied, but the general increase, if any, for the title formerly occupied, effective on the date indicated, shall be applied.

DEF 001240 06

**Section 6.**

In the case of an Employee on leave of absence without pay the salary rate of such Employee shall be changed to reflect the salary adjustments specified in Article III.

**Section 7.  Advancement Increase**

A person permanently employed by the Employer who is appointed or promoted on a permanent, provisional, or temporary basis in accordance with Personnel Rules and Regulations of the City of New York  or, where the Personnel Rules and Regulations of the City of new York are inapplicable to a public employer, such other Rules or Regulations as are applicable to the public employer, without a break in service to any of the following title(s) from another title in the direct line of promotion or from another title in the Career and Salary Plan, the minimum rate of which is exceeded by at least 8 percent by the minimum rate of the title to which appointed or promoted, shall receive upon the date of such appointment or promotion either the minimum basic salary for the title to which such appointment or promotion is made, or the salary received or receivable in the lower title plus the specified advancement increase, whichever is greater:

|  | **Effective 3/3/08** | **Effective 3/2/10** |
|---|---|---|
| Motor Vehicle Supervisor | $1,277 | $1,347 |
| Motor Vehicle Supervisor (OTB) | $1,277 | $1,347 |
| Senior Motor Vehicle Supervisor | $1,738 | $1,833 |

**Section 8.  Assignment Level Increase**

An Employee assigned to a higher assignment level shall receive as of the effective date of such assignment, either the appointment rate for the assigned level or the rate received in the former level plus the specified amount listed below, whichever is greater:

|  | **Effective 3/3/08** | **Effective 3/2/10** |
|---|---|---|
| Traffic Enforcement Agent Level III | $1,163 | $1,227 |

**Section 9.  Longevity Increment**

a.    Employees with 15 years or more of "City" service in pay status shall receive a longevity increment of $800 per annum.

b.    The rules for eligibility for the longevity increment described above in subsection a, shall be set forth in Appendix A of this Agreement and are incorporated by reference herein.

DEF000250 0 6

## Section 10. Recurring Increment Payment

**a.**   All full-time per annum and full time per diem Employees covered by this agreement shall be eligible to receive the RIP as set forth below:

| Title | Years of City Service | **3/3/08** Increment | **3/3/08** Total RIP |
|---|---|---|---|
| Traffic Enforcement Agent, Lvl. III, Lvl. IV | 5 | $1,252 | $1,252 |
| | 10 | $1,660 | $2,912 |
| Motor Vehicle Operator | 10 | $1,309 | $1,309 |
| Motor Vehicle Operator (OTB) | 10 | $1,309 | $1,309 |
| Motor Vehicle Supervisor | 10 | $1,309 | $1,309 |
| Motor Vehicle Supervisor (OTB) | 10 | $1,309 | $1,309 |
| Sr. Motor Vehicle Supervisor | 10 | $1,309 | $1,309 |

| Title | Years of City Service | **3/3/09** Increment | **3/3/09** Total RIP |
|---|---|---|---|
| Traffic Enforcement Agent, Lvl. III, Lvl. IV | 5 | $1,302 | $1,302 |
| | 10 | $1,726 | $3,028 |
| Motor Vehicle Operator | 10 | $1,361 | $1,361 |
| Motor Vehicle Operator (OTB) | 10 | $1,361 | $1,361 |
| Motor Vehicle Supervisor | 10 | $1,361 | $1,361 |
| Motor Vehicle Supervisor (OTB) | 10 | $1,361 | $1,361 |
| Sr. Motor Vehicle Supervisor | 10 | $1,361 | $1,361 |

**b.**   The RIP shall be based upon years of City service and shall be paid in addition to the Longevity Increment in Section 9.  RIPs shall be payable January 1, April 1, July 1, or October 1 subsequent to the qualifying employee's anniversary date, subject to the eligibility set forth in Appendix B of this Agreement.

## Section 11.  Assignment Differentials

**a.**  Effective as of the dates indicated, a differential in the amounts set forth below shall be paid to an Employee in the title of Motor Vehicle Operator (including OTB) for each normal work shift during which the Employee actually drives one of the following vehicles:

| **Effective** **3/3/08** | **Effective** **3/2/10** |
|---|---|
| $4.87/shift | $5.14/shift |

1. A vehicle having a maximum gross weight of between 18,000 lbs. and 28,999 lbs.
2. Tow Truck
3. Tower Truck
4. Sweeper
5. Dump Truck (must have power take off and/or hydraulic unit for raising or lowering dump body.)

6.   Zamboni
7.   Mounted Compressor
8.   Cherry Picker, High Ranger, Tree Lift or Tree Trimmer
9.   Dempster Dumpster
10.  Gasoline and Kerosene Truck with mounted tank (tank must be mounted on chassis.)
11.  Moline Snow Plow, Cross Walk Plow
12.  Iron Horse
13.  Bus seating between 14 and 39 passengers
14.  Truck when towing generator or compressor
15.  Patrol Wagon

**i.**  In addition to any differential payable under Section 11 (a) (2) above, effective as of the date indicated, an assignment differential in the pro-rated annual amount set forth below, shall be paid to Motor Vehicle Operators in the Police Department who actually drive a Tow Truck:

| **Effective 3/3/08** | **Effective 3/2/10** |
|---|---|
| $1,206/per annum | $1,272/per annum |

**b.**  Effective as of the dates indicated, a differential in the amounts set forth below shall be paid to an Employee in the title of Motor Vehicle Operator (including OTB) for each normal work shift during which the Employee actually drives one of the following vehicles:

| **Effective 3/3/08** | **Effective 3/2/10** |
|---|---|
| $9.69/shift | $10.22/shift |

1.   A vehicle having a maximum gross weight of 29,000 lbs. or more.
2.   Packer Loader
3.   Motor Grader
4.   Bulldozer
5.   Bus seating 40 or more passengers
6.   MERVAN
7.   Front End Loader
8.   Back Hoe
9.   Tractor Trailer
10.  Wengill Wagon
11.  Large Wrecker and/or Large Twin Boom Tow Truck
12.  Boom Truck
13.  Scavenger and/or Beach Sanitizer
14.  Truck when towing powerray portable asphalt storage unit.
15.  Roll Back and Winch Truck
16.  Large Furniture Van

DEF000107 0 6

In lieu of any differential payable under Section 11 (b) (1), effective as of the date indicated, an assignment differential in the amount set forth below shall be paid to Motor Vehicle Operators specified in the agencies listed below:

In the Fire Department for each normal work shift for those periods when the Employee operates a Tiller Truck (29,000 lbs. or more):

**Effective 3/1/08**
$9.69/shift

**Effective 3/3/08**
A total of $18.62/shift

**Effective 3/2/10**
A total of $19.64/shift

In the Police Department for each normal work shift for those periods when the Employee operates a Large Wrecker or Twin Boom Tow Truck:
In the Department of Correction for each normal work shift for those periods when the Employee operates a Large Wrecker or Twin Boom Tow Truck:

**Effective 3/1/08**
$9.69/shift

**Effective 3/3/08**
$38.00/shift

**Effective 3/2/10**
$40.08/shift

i.   In addition to any differential payable under Section 11 a (i), 11 (b) (I) or 11 (b) (9), effective as of the date indicated, an assignment differential in the amount set forth below shall be paid to Motor Vehicle Operators in the Police Department for each normal work shift for those periods when the Employee operates a Tractor Trailer or a Truck having a maximum gross weight of 29,000 lbs. or more:

**Effective 3/3/08**
Total of $18.62/shift

**Effective 3/2/10**
Total of $19.64/shift

DEF000400 0.6

ii. In addition to any differential payable under Section 11 (b) (1), effective as of the date indicated, an assignment differential in the amount set forth below shall be paid to an employee in the title of Motor Vehicle Operator in the Department of Environmental Protection for each normal work shift during which the Employee is assigned to the Residual Unit or Lug Unit and actually drives a truck having a maximum gross weight of 29,000 lbs. or more.

**Effective**
**3/3/08**
Total of $18.62/shift

**Effective**
**3/2/10**
Total of $19.64/shift

c. In addition to any differential payable under Section 11(a), 11 (a)(i), 11(b), 11(b)(i) or 11(b)(ii), a differential in the amount indicated below shall be paid to each Employee in the title Motor Vehicle Operator (including OTB) for each work shift or any part thereof during which said employee is required to drive an Eleven Cubic Yard Dump Truck ("Queen Mary") or a vehicle with an equivalent or greater capacity or weight when used to plow snow on public street or limited access highways. Employees who are normally required to drive such vehicles shall, where possible, be granted preference in driving such vehicles when used to plow snow on public street or limited access highways, including on an overtime basis.

| **Effective** | **Effective** | **Effective** |
|---|---|---|
| **3/2/08** | **3/3/08** | **3/2/10** |
| $9.69/shift | $9.69/shift | $10.22/shift |

d. **Applicable Rules for Assignment Differentials Provided in Subsections a, b, c and l:**

(i) The differential shall not be paid for driving a heavy duty or special vehicle within the yard unless its special purpose is to be driven within the yard.

(ii) When an Employee in the title of Motor Vehicle Supervisor or Senior Motor Vehicle Supervisor is assigned as a replacement for a Motor Vehicle Operator and drives a Heavy Duty and/or Special Vehicle as described in subsections 11 (a), 11(a)(i), 11 (b), 11 (b) (i), 11 (b) (ii) and 11 (c) above, the Employee shall receive the specific assignment differential assigned to the vehicle.

(iii) Except for the differentials provided in subsections 11(a)(i), 11(b)(i), 11(b)(ii), 11(c) and 11 (l), an Employee shall not receive more than one differential payment for a work shift.

(iv) The first eligible Employee assigned to a vehicle for a shift shall receive the differential and shall continue to be assigned to said vehicle. In other situations, the principle of seniority shall prevail if the Employee is capable of driving the vehicle.

e.  A differential, as indicated below, per normal work shift shall be paid to an Employee in the title of Traffic Enforcement Agent Level III required to drive either a large wrecker and/or twin boom tow truck.

| Effective 3/3/08 | Effective 3/2/10 |
|---|---|
| $38.00/shift | $40.08/shift |

f.  A differential, in the pro-rated annual amount set forth below, shall be paid to an Employee in the title of Traffic Enforcement Agent Level IV assigned to Highway Emergency Local Patrol.

| Effective 3/3/08 | Effective 3/2/10 |
|---|---|
| $888/annum | $937/annum |

g.  An assignment differential in the pro-rated annual amount set forth below shall be paid to Motor Vehicle Operators in the Fire Department assigned within the Ambulance Division of the Emergency Medical Service (except those working in the Communication Center of the Emergency Medical Service who shall not be eligible for this assignment differential):

| Effective 3/3/08 | Effective 3/2/10 |
|---|---|
| $995/annum | $1,049/annum |

h.  An assignment differential in addition to any other differential (s) to which the Employee is entitled shall be paid to Motor Vehicle Operators in the Bureau of Motor Equipment of the Department of Sanitation in the pro-rated annual amount indicated below for those periods when the Employee is assigned and actually drives the tire delivery trucks and, in addition to their other duties and as part of their duties on tire delivery trucks, loads and unloads tires, parts, and equipment:

| Effective 3/3/08 | Effective 3/2/10 |
|---|---|
| $5,173/annum | $5,456/annum |

i.  An assignment differential in the pro-rated annual amount set forth below, shall be paid to Motor Vehicle Operators in the Department of Citywide Administrative Services for those periods when the Employee is assigned to load and unload heavy equipment and materials at warehouses, delivery points, platforms, moving vans or trucks and other duties generally performed by Group B Laborers as part of their duties on delivery trucks.

| Effective 3/3/08 | Effective 3/2/10 |
|---|---|
| $5,173/annum | $5,456/annum |

DEF000010 6

**j.**  An assignment differential in the pro-rated annual amount set forth below, shall be paid to Motor Vehicle Operators in the Financial Information Systems Agency for those periods when the Employee is assigned on a regular basis to perform duties of loading and unloading vehicles, sorting, making pick-ups and room deliveries of mail, packages and heavy boxed documents to agencies which send or receive such mail, documents, packages and/or boxes from the Agency:

| Effective 3/3/08 | Effective 3/2/10 |
|---|---|
| $2,543 | $2,682 |

**k.**  Effective as of the date indicated, an assignment differential as set forth below shall be paid to Motor Vehicle Operators in the Health and Hospitals Corporation for each normal work shift during which the employee is assigned to the Morgue Driver Detail.

| Effective 3/3/08 | Effective 3/2/10 |
|---|---|
| $4.64/shift | $4.89/shift |

**l.**  In addition to any differential payable under Section 11(b)(1)(2) and (16), an assignment differential in the amount set forth below, shall be paid to an Employee in the title of Motor Vehicle Operator in the Department of Education for each normal work shift during which the Employee actually drives a vehicle having a maximum gross weight of 29,000 lbs. or more, a large furniture van or a packer loader.

**Effective 3/3/08**
total of $18.62/shift

**Effective 3/2/10**
Total of $19.64/shift

**m.**  A differential, as indicated below, per normal work shift shall be paid to an Employee in the title of Motor Vehicle Operator required to drive a Laundry Truck in the Department of Homeless Services.

| Effective 3/2/08 | Effective 3/3/08 | Effective 3/2/10 |
|---|---|---|
| $18.62/shift | $18.62/shift | $19.64/shift |

DEF000111
12006

**n.** Effective as of the date indicated, an assignment differential, in the pro-rated annual amount as set forth below, shall be paid to Motor Vehicle Operators in the Health and Hospitals Corporation when assigned on a regular basis to the Cook-Chill Plant on the campus of Kings County Hospital Center.

| **Effective 3/3/08** | **Effective 3/2/10** |
|---|---|
| $2,758/annum | $2,909/annum |

## Section 12. Uniform Allowance

The enumerated pro-rated annual sums shall be provided to employees in the listed classes of positions who are required to wear uniforms in the indicated agencies:

| **Title** | **Effective 3/3/08** | **Effective 3/2/10** |
|---|---|---|
| **Motor Vehicle Operator** | | |
| Health and Hospitals Corporation | $271 | $286 |
| Department of Sanitation | $271 | $286 |
| Department of Correction | $271 | $286 |
| Police Department | $314 | $331 |
| Department of Cultural Affairs | $223 | $235 |
| EMS/Fire | $271 | $286 |
| OTB | $271 | $286 |
| **Motor Vehicle Supervisor** | | |
| OTB | $271 | $286 |
| Health and Hospitals Corporation | $271 | $286 |
| Department of Cultural Affairs | $350 | $369 |
| EMS/Fire | $271 | $286 |
| **Sr. Motor Vehicle Supervisor** | | |
| Health and Hospitals Corporation | $271 | $286 |
| Department of Cultural Affairs | $271 | $286 |
| EMS/Fire | $271 | $286 |
| **Traffic Enforcement Agent** | | |
| Level III | $723 | $763 |
| **Traffic Enforcement Agent** | | |
| Level IV | $723 | $763 |

DEF000126

## ARTICLE IV - WELFARE FUND

### Section 1.

**a.**  In accordance with the election by the Union pursuant to the provisions of Article XIII of the Citywide Agreement between the City of New York and related public employers and District Council 37, AFSCME, AFL-CIO, the Welfare Fund provisions of the 1995-2001 Citywide Agreement, as amended or any successor agreement(s) thereto, shall apply to Employees covered by this Agreement.

**b.**  When an election is made by the Union pursuant to the provisions of Article XIII, Section l(b), of the Citywide Agreement between the City of New York and related public employers and District Council 37, AFSCME, AFL-CIO, the provisions of Article XIII, Section l(b) of the 1995-2001 Citywide Agreement, as amended or any successor agreement(s) thereto, shall apply to Employees covered by this Agreement, and when such election is made, the Union hereby waives its right to training, education and/or legal services contributions provided in this Agreement, if any.  In no case shall the single contribution provided in Article XIII, Section l(b) of the 1995-2001 Citywide Agreement, as amended or any successor agreement(s) thereto, exceed the total amount that the Union would have been entitled to receive if the separate contributions had continued.

### Section 2.

The Unions agree to provide welfare fund benefits to domestic partners of covered Employees in the same manner as those benefits are provided to spouses of married covered employees.

### Section 3.

In accordance with the Health Benefits Agreement dated January 11, 2001, each welfare fund shall provide welfare fund benefits equal to the benefits provided on behalf of an active employee to widow(er)s, domestic partners and/or children of any employee who dies in the line of duty as that term is referenced in Section 12-126(b)(2) of the New York City Administrative Code.  The cost of providing this benefit shall be funded by the Stabilization Fund.

## ARTICLE V - PRODUCTIVITY AND PERFORMANCE

### Introduction

Delivery of municipal services in the most efficient, effective and courteous manner is of paramount importance to the Employer and the Union. Such achievement is recognized to be a mutual obligation of both parties within their respective roles and responsibilities. To achieve and maintain a high level of effectiveness, the parties hereby agree to the following terms:

DEF008113

## Section 1. Performance Levels

**a.**   The Union recognizes the Employer's right under the New York City Collective Bargaining Law to establish and/or revise performance standards or norms notwithstanding the existence of prior performance levels, norms or standards. Such standards, developed by usual work measurement procedures, may be used to determine acceptable performance levels, to prepare work schedules and to measure the performance of each employee or group of employees. Notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees are within the scope of collective bargaining. The Employer will give the Union prior notice of the establishment and/or revision of performance standards or norms hereunder.

**b.**   Employees who work at less than acceptable levels of performance may be subject to disciplinary measures in accordance with applicable law.

## Section 2. Supervisory Responsibility

**a.**   The Union recognizes the Employer's right under the New York City Collective Bargaining Law to establish and/or revise standards for supervisory responsibility in achieving and maintaining performance levels of supervised employees for employees in supervisory positions listed in Article I, Section 1, of this Agreement. Notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees are within the scope of collective bargaining. The Employer will give the Union prior notice of the establishment and/or revision of standards for supervisory responsibility hereunder.

**b.**   Employees who fail to meet such standards may be subject to disciplinary measures in accordance with applicable law.

## Section 3. Performance Compensation

The Union acknowledges the Employer's right to pay additional compensation for outstanding performance.

The Employer agrees to notify the Union of its intent to pay such additional compensation.

## Section 4.

The Employer and the Union recognize the need to continue and develop incentives for safe driving and the importance of promotional opportunities as an incentive to efficiency in all agencies.

DEF000114
12006

**Section 5.**

A Motor Vehicle Operator may be required to perform any assignment consistent with the New York City Department of Personnel Specification, CODE NO. 91212 promulgated November 29, 1965, or any subsequent superseding specifications.

**Section 6.**

When not driving, any Motor Vehicle Operator may be required to perform such additional duties as running errands, answering phones and delivering mail and/or small packages.

**Section 7.**

The Motor Vehicle Operator shall load, unload and make deliveries as required. Should delivery of heavy or bulky items require the services of more than one individual, then the Motor Vehicle Operator shall assist.

## ARTICLE VI - PRODUCTIVITY BY AGENCY

### Introduction

Productivity in the various agencies may best be improved by focusing on specific assignments; thus the parties further agree:

**Section 1.**

In the Department of Citywide Administrative Services, the Motor Vehicle Operator shall perform their present normal duties and those additional productivity duties as outlined in the following subsections:

**a.**     Passenger Car - (Division of Public Structures): When the official whom a Motor Vehicle Operator drives is absent for a day or for a length of time, then said Motor Vehicle Operator shall be assigned to other Motor Vehicle Operator duties.

**b.**     Station Wagon - (Division of Public Structures): When not actually driving, Motor Vehicle Operators shall assist in loading and unloading of materials.

**c.**     Bus (20 Passenger) - (Division of Public Structures): Motor Vehicle Operators shall assist passengers getting on or off the bus, perform preventive care of vehicle, and clean the windows, interior and exterior of the bus. When not driving the bus, Motor Vehicle Operators shall be assigned to other driving duties or detailing in garage area.

DEF000115
12006

**d.**    Moving Van (Furniture) - (Division of Public Structures): Motor Vehicle Operators shall assist in loading and unloading the Van.  Motor Vehicle Operators shall make light deliveries and light pick-ups by themselves.  When not driving the Van, Motor Vehicle Operators shall be assigned to other driving duties.

**e.**    Tow Trucks - (Division of Public Structures): When not operating tow trucks, Motor Vehicle Operators shall be assigned to work around the garage area.  Such work shall include but not be limited to moving cars awaiting repairs, moving heavy supplies with the use of mechanical assistance such as chain hoists, and hand trucks or dollies, moving cars obstructing traffic in the vicinity of the repair area, operating the snow plow in the vicinity of the garage and/or answer phones.

**f.**    Small Panel Truck - (Municipal Broadcasting System): Motor Vehicle Operators shall assist in loading, delivering, setting up, dismantling and/or unloading equipment, and assisting the Engineer in non-technical work.

**g.**    Sedan - (Division of Municipal Supplies): This is a solo operation.  Upon completion of messenger service (mail pick-up and delivery), if time permits, Motor Vehicle Operators shall sort mail, answer phones, and perform related activities as may be assigned by the Supervisor.

**h.**    Small Van Truck - (Typewriter Service):  This is a solo operation.  Motor Vehicle Operators shall load, unload, make pick-ups and room deliveries except at Correctional Institutions, Hospitals and Colleges where pick-up and deliveries shall be at designated areas.

**i.**    All Motor Vehicle Operators in the Department of Citywide Administrative Services shall operate snow plows in the vicinity of garages and warehouses when not performing their regular duties.

## Section 2.

In the Department of Transportation, Bureau of Highway Operations, Motor Vehicle Operators shall perform their present normal duties and those additional productivity duties as outlined in the following subsections:

**a.**    At the direction of the Supervisor, unless extraordinary conditions prevent it, Motor Vehicle Operators assigned to the asphalt resurfacing program shall pick up and deliver at least three (3) loads per day.

**b.**    Motor Vehicle Operators shall be responsible for assisting in "chaining-up" of vehicles to be used in snow emergency.

**c.**    In inclement weather, after loading at the asphalt plant, Motor Vehicle Operators assigned to the asphalt resurfacing program shall assist and see to it that the hot asphalt is covered with a tarpaulin.

DEF000116

12006

d.      When not operating a vehicle at a work site, Motor Vehicle Operators shall place cones in designated areas, set up barricades when necessary, and flag on-coming vehicles as directed.

## Section 3.

In the Department of Records and Information Services, Motor Vehicle Operators shall perform their present normal duties and the following additional productivity duties: load and unload the vehicles; pick up and deliver by themselves records as requested by City agencies; and also deliver empty cartons.

## Section 4.

In the New York City Fire Department, Motor Vehicle Operators shall perform their present normal duties and those additional productivity duties as outlined in the following subsections:

a. Duties required of Motor Vehicles Operators assigned to Emergency Medical Service Ambulances:

### Specification A. - Assignment to Ambulance:

1.      Motor Vehicle Operator shall check ambulance for gas, oil, water, battery, radio (Two-way), lights, damages, etc.

2.      Shall maintain interior, exterior of ambulance for cleanliness. Shall wash vehicle whenever required.

3.      Shall perform minor repairs required for safe operation of assigned vehicle, such as replace light bulbs, wiper blades, flat tires, grease or other related preventive maintenance as required.

4.      Shall be familiar with all two-way radio code signal for ambulance operation.

5.      Shall prepare Motor Vehicle Operator's Trip Log Sheet (C.O. 4) and Motor Vehicle Operator's Recap Sheet.

6.      Shall check ambulance for all medical equipment under his jurisdiction, such as body bags, stretcher, poles, pads, etc.

### Specification B - Operation in Emergency Medical Service:

1.      Motor Vehicle Operators shall maintain communications via radio or land line to ambulance communication division for continuity of availability.

2.      Motor Vehicle Operators may be assigned to dispatch, record, time stamp, emergency ambulance calls in the absence of a Supervisor. They shall maintain the ambulance log books for proper recording of all calls.

DEF000117
12006

3.    Shall alert the Communications Division of any unusual or multiple casualty conditions upon arrival or in route to a call.

4.    Shall, upon arrival at place of call, assist with emergency treatment, removal, (chair, stretcher or assisting to walk) with ambulance technicians or other authorized personnel, injured or ill patients.

5.    Shall take normal precautions to prevent loss of ambulance and equipment.

6.    Shall report loss or theft.

7.    Shall report all accidents to proper authority and also prepare required written reports.

8.    Upon completion of assigned calls, shall as required replace all needed equipment. Clean and prepare ambulance for next assignment.

### Specification C. - Deportment:

1.    Motor Vehicle Operators shall be in proper authorized uniform during assigned tour of duty.

2.    Motor Vehicle Operators' conduct shall be courteous and efficient at all times during his/her tour of duty.

3.    Motor Vehicle Operator shall operate their assigned vehicles in a safe and lawful manner as prescribed by all applicable laws and regulations including the Emergency Medical Service Directives.

b.    The following duties shall be required of Motor Vehicle Operators assigned to MERVAN in addition to Specifications A, B, and C set forth in Subsection 4(a) above:

1.    Inspect and operate auxiliary power supply.

2.    Inspect and fill water tanks.

3.    Inspect and check all water lines.

4.    Inspect and check outside power lines.

5.    Then in service, shall also act as radio communicator for central disaster control unit.

**DEF000118**
**12006**

**Section 5.**

In the New York City Health and Hospitals Corporation, Motor Vehicle Operators shall perform their present normal duties and those additional productivity duties as outlined in the following subsections:

**a.**     Motor Vehicle Operators when assigned to Mortuary Service shall be subject to Specifications A (except as noted below) and C as set forth in Subsection 4(a) above and shall also be required to perform the following duties:

**Specification B - Operation in Mortuary Service:**

1.     Motor Vehicle Operators shall maintain land line communication with Mortuary Office for continued availability to pick up "Emergency Medical Examiner" cases. (possible homicides, suicides, possible foul play).

2.     Shall be required to assist in the removal and carrying of bodies from homes, hospitals or other institutions or public places to county morgues.

**Section 6.**

In the New York City Human Resources Administration, Motor Vehicle Operators shall perform their present normal duties and those additional productivity duties as outlined in the following subsections:

**a.**     Motor Vehicle Operators when assigned to Home Care Services shall be subject to Specifications A (except item 4) and C as set forth in Subsection 4(a) above and shall also be required to perform the following duties:

**Specification C - Operation in the Home Care Service:**

1.     Motor Vehicle Operators shall maintain communication with the Director of Home Care Service in order to insure continuity of availability.

2.     Motor Vehicle Operators shall maintain accurate trip tickets of all trips to patients' homes, clinics, doctors visits to patients' homes, drug deliveries, etc.

3.     Same as Ambulance

4.     Shall when required assist Home Care Technician or Doctor in transporting a patient to or from hospital or clinic.

5.     Items 5, 6, and 7 same as Ambulance

DEF000119
12006

## ARTICLE VII - GRIEVANCE PROCEDURE

### Section 1. - Definition:

The term **"Grievance"** shall mean:

**a.**    A dispute concerning the application or interpretation of the terms of this Agreement;

**b.**    A claimed violation, misinterpretation or misapplication of the rules or regulations, *written* policy or orders of the Employer applicable to the agency which employs the grievant affecting terms and conditions of employment; provided, disputes involving the Rules and Regulations of the City of New York or the Rules and Regulations of the Health and Hospitals Corporation with respect to those matters set forth in the first paragraph of Section 7390.1 of the Unconsolidated Laws shall not be subject to the grievance procedure or arbitration;

**c.**    A claimed assignment of Employees to duties substantially different from those stated in their job specifications;

**d.**    A claimed improper holding of an open-competitive rather than a promotional examination;

**e.**    A claimed wrongful disciplinary action taken against a permanent Employee covered by Section 75(1) of the Civil Service Law or a permanent Employee covered by the Rules and Regulations of the Health and Hospitals Corporation upon whom the agency head has served written charges of incompetence or misconduct while the Employee is serving in the Employee's permanent title or which affects the Employee's permanent status.

**f.**    Failure to serve written charges as required by Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation upon a permanent Employee covered by Section 75(1) of the Civil Service Law or a permanent Employee covered by the Rules and Regulations of the Health and Hospitals Corporation where any of the penalties (including a fine) set forth in Section 75(3) of the Civil Service Law have been imposed.

**g.**    A claimed wrongful disciplinary action taken against an eligible provisional employee of a Mayoral agency who has served without a break in service for two years in the same or similar title or related occupational group in the same agency on a full-time per annum or full-time per diem basis and has been assigned regularly to work the normal, full-time work week established for that title.

### Section 2.

The Grievance Procedure, except for grievances as defined in Sections l(d), 1(e), and 1(g) of this Article, shall be as follows:

Employees may at any time informally discuss with their supervisors a matter which may become a grievance. If the results of such a discussion are unsatisfactory, the Employees may present the grievance at **STEP I**.

All grievances must be presented in writing at all steps in the grievance procedure. For all grievances as defined in Section l(c), no monetary award shall in any event cover any period prior to the date of the filing of the **STEP I** grievance unless such grievance has been filed within thirty (30) days of the assignment to alleged out-of-title work. No monetary award for a grievance alleging a miscalculation of salary rate resulting in a payroll error of a continuing nature shall be issued unless such grievance has been filed within the time limitation set forth in **STEP I** below for such grievances; if the grievance is so filed, any monetary award shall in any event cover only the period up to six years prior to the date of the filing of the grievance.

**STEP I**   The Employee and/or the Union shall present the grievance in the form of a memorandum to the person designated for such purpose by the agency head no later than 120 days after the date on which the grievance arose except that grievances alleging a miscalculation of salary rate resulting in a payroll error of a continuing nature shall be presented no later than 120 days after the first date on which the grievant discovered the payroll error. The Employee may also request an appointment to discuss the grievance and such request shall be granted.

The person designated by the Employer to hear the grievance shall take any steps necessary to a proper disposition of the grievance and shall issue a determination in writing by the end of the third work day following the date of submission.

*The following STEP I(a) shall be applicable only in the Health and Hospitals Corporation in the case of grievances arising under Section 1(a) through 1(c) of this Article and shall be applied prior to Step II of this Section:*

**STEP I (a)**   An appeal from an unsatisfactory determination at **STEP I** shall be presented in writing to the person designated by the agency head for such purpose. An appeal must be made within five (5) work days of the receipt of the **STEP I** determination. A copy of the grievance appeal shall be sent to the person who initially passed upon the grievance. The person designated to receive the appeal at this **STEP I** shall meet with the Employee and/or the Union for review of the grievance and shall issue a determination to the Employee and/or the Union by the end of the fifth work day following the day on which the appeal was filed.

**STEP II**   An appeal from an unsatisfactory determination at **STEP I** or **STEP I(a),** where applicable, shall be presented in writing to the agency head or the agency head's designated representative who shall not be the same person designated in **STEP I.** An appeal must be made within five (5) work days of the receipt of the **STEP I** or **STEP I(a)** determination. The agency head or designated representative, if any, shall meet with the Employee and/or the Union for review of the grievance and shall issue a determination in writing by the end of the tenth work day following the date on which the appeal was filed.

**STEP III**   An appeal from an unsatisfactory determination at **STEP II** shall be presented by the Employee and/or the Union to the Commissioner of Labor Relations in writing within ten (10) work days of the receipt of the **STEP II** determination. The grievant or the Union should submit copies of the **STEP I** and **STEP II** grievance filings and any agency responses thereto. Copies of such appeal shall be sent to the agency head. The

DEF000006

Commissioner of Labor Relations or the Commissioner's designee shall review all appeals from **STEP II** determinations and shall issue a determination on such appeals within fifteen (15) work days following the date on which the appeal was filed.

**STEP IV**    An appeal from an unsatisfactory determination at **STEP III** may be brought solely by the Union to the Office of Collective Bargaining for impartial arbitration within fifteen (15) work days of receipt of the **STEP III** determination.  In addition, the Employer shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined herein as a "grievance."  The Employer shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining.  A copy of the notice requesting impartial arbitration shall be forwarded to the opposing party.  The arbitration shall be conducted in accordance with the Title 61 of the Rules of the City Of New York.  The costs and fees of such arbitration shall be borne equally by the Union and the Employer.

The arbitrator's decision, order or award (if any) shall be limited to the application and interpretation of the Agreement, and the arbitrator shall not add to, subtract from or modify the Agreement.  The arbitrator's award shall be final and binding and enforceable in any appropriate tribunal in accordance with Article 75 of the Civil Practice Law and Rules.  The arbitrator may provide for and direct such relief as the arbitrator deems necessary and proper, subject to the limitations set forth above and any applicable limitations of law.

## Section 3.

As a condition to the right of the Union to invoke impartial arbitration set forth in this Article, including the arbitration of a grievance involving a claimed improper holding of an open-competitive rather than a promotional examination, the Employee or Employees and the Union shall be required to file with the Director of the Office of Collective Bargaining a written waiver of the right, if any, of such Employee(s) and the Union to submit the underlying dispute to any other administrative or judicial tribunal except for the purpose of enforcing the arbitrator's award.

## Section 4.

**a.**    Any grievance under Section l(d) relating to a claimed improper holding of an open-competitive rather than a promotional examination shall be presented in writing by the Employee or the Union representative to the Commissioner of Labor Relations not later than thirty (30) days after the notice of the intention to conduct such open-competitive examination, or copy of the appointing officer's request for such open-competitive examination, as the case may be, has been posted in accordance with Section 51 of the Civil Service Law. The grievance shall be considered and passed upon within ten (10) days after its presentation. The determination shall be in writing, copies of which shall be transmitted to both parties to the grievance upon issuance.

**b.**    A grievance relating to the use of an open-competitive rather than a promotional examination which is unresolved by the Commissioner of Labor Relations may be brought to impartial arbitration as provided in Sections 2 and 3 above. Such a grievance shall be presented by the Union, in writing, for arbitration within 15 days of the presentation of such grievance to the Commissioner of Labor Relations, and the arbitrator shall decide such grievance within 75 days

DEF000122
- 1 2 0 0 8

of its presentation to the arbitrator. The party requesting such arbitration shall send a copy of such request to the other party. The costs and fees of such arbitration shall be borne equally by the Employer and the Union.

**Section 5.**      **Disciplinary Procedures for Permanent Competitive Employees**

In any case involving a grievance under Section l(e) of this Article, the following procedure shall govern upon service of written charges of incompetence or misconduct:

**STEP A**          Following the service of written charges, a conference with such Employee shall be held with respect to such charges by the person designated by the agency head to review a grievance at **STEP I** of the Grievance Procedure set forth in this Agreement. The Employee may be represented at such conference by a representative of the Union. The person designated by the agency head to review the charges shall take any steps necessary to a proper disposition of the charges and shall issue a determination in writing by the end of the fifth day following the date of the conference. If the Employee is satisfied with the determination in **STEP A** above, the Employee may choose to accept such determination as an alternative to and in lieu of a determination made pursuant to the procedures provided for in Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation. As a condition of accepting such determination, the Employee shall sign a waiver of the Employee's right to the procedures available to him or her under Sections 75 and 76 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation.

**STEP B (i)**      If the Employee is not satisfied with the determination at **STEP A** above then the Employer shall proceed in accordance with the disciplinary procedures set forth in Section 75 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation. As an alternative, the Union with the consent of the Employee may choose to proceed in accordance with the Grievance Procedure set forth in this Agreement, including the right to proceed to binding arbitration pursuant to **STEP IV** of such Grievance Procedure. As a condition for submitting the matter to the Grievance Procedure the Employee and the Union shall file a written waiver of the right to utilize the procedures available to the Employee pursuant to Sections 75 and 76 of the Civil Service Law or the Rules and Regulations of the Health and Hospitals Corporation or any other administrative or judicial tribunal, except for the purpose of enforcing an arbitrator's award, if any. Notwithstanding such waiver, the period of an Employee's suspension without pay pending hearing and determination of charges shall not exceed thirty (30) days.

**STEP B (ii)**     If the election is made to proceed pursuant to the Grievance Procedure, an appeal from the determination of **STEP A** above, shall be made to the agency head or designated representative. The appeal must be made in writing within five (5) work days of the receipt of the determination. The agency head or designated representative shall meet with the Employee and the Union for review of the grievance and shall issue a determination to the Employee and the Union by the end of the tenth work day following the day on which the appeal was filed. The agency head or designated representative

DEF000123

12006

shall have the power to impose the discipline, if any, decided upon, up to and including termination of the accused Employee's employment. In the event of such termination or suspension without pay totaling more than thirty (30) days, the Union with the consent of the grievant may elect to skip **STEP C** of this Section and proceed directly to **STEP D.**

**STEP C**     If the grievant is not satisfied with the determination of the agency head or designated representative the grievant or the Union may appeal to the Commissioner of Labor Relations in writing within ten (10) work days of the determination of the agency head or designated representative. The Commissioner of Labor Relations shall issue a written reply to the grievant and the Union within fifteen (15) work days.

**STEP D**     If the grievant is not satisfied with the determination of the Commissioner of Labor Relations, the Union with the consent of the grievant may proceed to arbitration pursuant to the procedures set forth in **STEP IV** of the Grievance Procedure set forth in this Agreement.

**<u>Section 6</u>.      <u>Disciplinary Procedure for Provisional Employees</u>**

In any case involving a grievance under Section 1(g) of this Article, the "Disciplinary Procedure for Provisional Employees", including side-letter, appended, shall govern.

**<u>Section 7.</u>**

A grievance concerning a large number of Employees and which concerns a claimed misinterpretation, inequitable application, violation or failure to comply with the provisions of this Agreement may be filed directly at **STEP III** of the grievance procedure except that a grievance concerning Employees of the Health and Hospitals Corporation may be filed directly at **STEP II** of the grievance procedure. Such "group" grievance must be filed no later than 120 days after the date on which the grievance arose, and all other procedural limits, including time limits, set forth in this Article shall apply. All other individual grievances in process concerning the same issue shall be consolidated with the "group" grievance.

**<u>Section 8.</u>**

If a determination satisfactory to the Union at any level of the Grievance Procedure is not implemented within a reasonable time, the Union may re-institute the original grievance at **STEP III** of the Grievance Procedure; or if a satisfactory **STEP III** determination has not been so implemented, the Union may institute a grievance concerning such failure to implement at **STEP IV** of the Grievance Procedure.

**<u>Section 9</u>.**

If the Employer exceeds any time limit prescribed at any step in the Grievance Procedure, the grievant and/or the Union may invoke the next step of the procedure, except that only the Union may invoke impartial arbitration under **STEP IV.**


DEF000124

**Section 10.**

The Employer shall notify the Union in writing of all grievances filed by Employees, all grievance hearings, and all determinations. The Union shall have the right to have a representative present at any grievance hearing and shall be given forty-eight (48) hours' notice of all grievance hearings.

**Section 11.**

Each of the steps in the Grievance Procedure, as well as time limits prescribed at each step of this Grievance Procedure, may be waived by mutual agreement of the parties.

**Section 12.**

A non-Mayoral agency not covered by this Agreement but which employs Employees in titles identical to those covered by this Agreement may elect to permit the Union to appeal an unsatisfactory determination received at the last step of its Grievance Procedure prior to arbitration on fiscal matters only to the Commissioner of Labor Relations. If such election is made, the Union shall present its appeal to the Commissioner of Labor Relations in writing within ten (10) work days of the receipt of the last step determination. The Union should submit copies of the grievance filings at the prior steps of its Grievance Procedure and any agency responses thereto. Copies of such appeals shall be sent to the agency head. The Commissioner of Labor Relations, or the Commissioner's designee, shall review all such appeals and answer all such appeals within fifteen (15) work days. An appeal from a determination of the Commissioner of Labor Relations may be taken to arbitration under procedures, if any, applicable to the non-Mayoral agency involved.

**Section 13.**

The grievance and the arbitration procedure contained in this Agreement shall be the exclusive remedy for the resolution of disputes defined as "grievances" herein. This shall not be interpreted to preclude either party from enforcing the arbitrator's award in court. This Section shall not be construed in any manner to limit the statutory rights and obligations of the Employer under Article XIV of the Civil Service Law.

**Section 14. Expedited Arbitration Procedure.**

a.   The parties agree that there is a need for an expedited arbitration process which would allow for the prompt adjudication of grievances as set forth below.

b.   The parties voluntarily agree to submit matters to final and binding arbitration pursuant to the New York City Collective Bargaining Law and under the jurisdiction of the Office of Collective Bargaining.  An arbitrator or panel of arbitrators, as agreed to by the parties, will act as the arbitrator of any issue submitted under the expedited procedure herein.

c.   The selection of those matters which will be submitted shall include, but not limited to, out-of-title cases concerning all titles, disciplinary cases wherein the proposed penalty is a monetary fine of one week or less or written reprimand, and other cases pursuant to mutual agreement by the parties.  The following procedures shall apply:

DEF0001152 0 0 0

i.  **SELECTION AND SCHEDULING OF CASES:**

    **(1)**    The Deputy Chairperson for Disputes of the Office of Collective Bargaining shall propose which cases shall be subject to the procedures set forth in this Section 14 and notify the parties of proposed hearing dates for such cases.

    **(2)**    The parties shall have ten business days from the receipt of the Deputy Chairperson's proposed list of cases and hearing schedule(s) to raise any objections thereto.

    **(3)**    If a case is not proposed by the Deputy Chairperson for expedited handling, either party may, at any time prior to the scheduling of an arbitration hearing date for such case, request in writing to the other party and to the Deputy Chairperson of Disputes of the Office of Collective Bargaining that said case be submitted to the expedited procedure. The party receiving such request shall have ten business days from the receipt of the request to raise any objections thereto.

    **(4)**    No case shall be submitted to the expedited arbitration process without the mutual agreement of the parties.

ii.  **CONDUCT OF HEARINGS:**

    **(1)**    The presentation of the case, to the extent possible, shall be made in the narrative form. To the degree that witnesses are necessary, examination will be limited to questions of material fact and cross examination will be similarly limited. Submission of relevant documents, etc., will not be unreasonably limited and may be submitted as a "packet" exhibit.

    **(2)**    In the event either party is unable to proceed with hearing a particular case, the case shall be rescheduled. However, only one adjournment shall be permitted. In the event that either party is unable to proceed on a second occasion, a default judgment may be entered against the adjourning party at the Arbitrator's discretion absent good cause shown.

    **(3)**    The Arbitrator shall not be precluded from attempting to assist the parties in settling a particular case.

    **(4)**    A decision will be issued by the Arbitrator within two weeks. It will not be necessary in the Award to recount any of the facts presented. However, a brief explanation of the Arbitrator's rationale may be included. Bench decisions may also be issued by the Arbitrator.

    **(5)**    Decisions in this expedited procedure shall not be considered as precedent for any other case nor entered into evidence in any other forum or dispute except to enforce the Arbitrator's award.

    **(6)**    The parties shall, whenever possible, exchange any documents intended to be offered in evidence at least one week in advance of the first hearing date and shall endeavor to stipulate to the issue in advance of the hearing date.

DEF000120 0 0 6

## ARTICLE VIII - BULLETIN BOARDS: EMPLOYER FACILITIES

The Union may post notices on bulletin boards in places and locations where notices usually are posted by the Employer for the employees to read. All notices shall be on Union stationery, and shall be used only to notify employees of matters pertaining to Union affairs. Upon request to the responsible official in charge of a work location, the Union may use Employer premises for meetings during employees' lunch hours, subject to availability of appropriate space and provided such meetings do not interfere with the Employer's business.

## ARTICLE IX - NO STRIKES

In accordance with the New York City Collective Bargaining Law, as amended, neither the Union nor any employee shall induce or engage in any strikes, slowdowns, work stoppages, mass absenteeism, or induce any mass resignations during the term of this Agreement.

## ARTICLE X - CITYWIDE ISSUES

This Agreement is subject to the provisions, terms and conditions of the Agreement which has been or may be negotiated between the City and the Union recognized as the exclusive collective bargaining representative on Citywide matters which must be uniform for specified employees, including the employees covered by this Agreement.  Employees in Rule X titles shall receive the benefits of the *Citywide Agreement* unless otherwise specifically excluded herein.

## ARTICLE XI - UNION ACTIVITY

Time spent by employee representatives in the conduct of labor relations with the City and on Union activities shall be governed by the terms of Executive Order No. 75, as amended, dated March 22, 1973, entitled "Time Spent on the Conduct of Labor Relations between the City and Its employees and on Union Activity" or any other applicable Executive Order.

## ARTICLE XII - LABOR-MANAGEMENT COMMITTEE

### Section 1.

The Employer and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee in each of the agencies having at least fifty employees covered by this Agreement.

### Section 2.

Each labor-management committee shall consider and recommend to the agency head changes in the working conditions of the employees within the agency who are covered by this Agreement. Matters subject to the Grievance Procedure shall not be appropriate items for consideration by the labor-management committee.

DEF0001270 0 6

## Section 3.

Each labor-management committee shall consist of six members who shall serve for the term of this Agreement. The Union shall designate three members and the agency head shall designate three members. Vacancies shall be filled by the appointing party for the balance of the term to be served. Each member may designate one alternate. Each committee shall select a chairperson from among its members at each meeting. The chairpersonship of each committee shall alternate between the members designated by the agency head and the members designated by the Union. A quorum shall consist of a majority of the total membership of a committee. A committee shall make its recommendations to the agency head in writing.

## Section 4.

The labor-management committee shall meet at the call of either the Union members or the Employer members at times mutually agreeable to both parties. At least one week in advance of a meeting the party calling the meeting shall provide, to the other party, a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of the committee.

## ARTICLE XIII - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law, including the New York State Financial Emergency Act for the City of New York as amended.

## ARTICLE XIV - APPENDICES

The Appendix or Appendices, if any, attached hereto and initialed by the undersigned shall be deemed a part of this Agreement as if fully set forth herein.

## ARTICLE XV - SAVINGS CLAUSE

In the event that any provision of this Agreement is found to be invalid, such invalidity shall not impair the validity and enforceability of the remaining provisions of this Agreement.

## ARTICLE XVI - CONTRACTING-OUT CLAUSE

The problem of "Contracting Out" or "Farming Out" of work normally performed by personnel covered by this Agreement shall be referred to the Labor-Management Committee as provided for in Article XII of this Agreement.

DEF000128

12006

## ARTICLE XVII - WORK SHIFTS AND SENIORITY

The length of the work shift for all Employees covered by this Agreement shall be negotiated on an agency by agency basis. Supplementary seniority provisions shall be negotiated for each mayoral agency upon demand of the Union through the Office of Municipal Labor Relations. The negotiations shall be limited to seniority for purposes within the agency, and shall not deal with seniority rights which may be extra-departmental or Citywide in scope, or with seniority as governed by the provisions of the Civil Service Law and the rules and regulations of the City Personnel Director.

## ARTICLE XVIII - CORPSMAN AND EMERGENCY MEDICAL SERVICE SPECIALIST

The titles of Corpsman and Emergency Medical Service Specialist have been established and Motor Vehicle Operators, among others, may be trained in health care, as well as driving. Nothing contained in this Agreement shall be construed to interfere with training of Motor Vehicle Operators to become Corpsmen or Emergency Medical Service Specialists in the utilization of the Corpsman or Emergency Medical Service Specialist titles.

DEF0012006

## Appendix A

## Longevity Increment Eligibility Rules

The following rules shall govern the eligibility of employees for the
longevity increments provided for in Article III, Section 9
of the 2008-2010 Motor Vehicle Operators Agreement:

1.  Only service in pay status shall be used to calculate the 15 years of service, except that for other than full time per annum Employees only a continuous year of service in pay status shall be used to calculate the 15 years of service. A continuous year of service shall be a full year of service without a break of more than 31 days. Where the regular and customary work year for a title is less than a twelve month year, such as a school year, such regular and customary year shall be credited as a continuous year of service counting towards the 15 years of service. If the normal work year for an Employee is less than the regular and customary work year for the Employee's title, it shall be counted as a continuous year of service if the Employee has customarily worked that length work year and the applicable agency verifies that information.

2.  Service in pay status prior to any breaks in service of more than one year shall not be used to calculate the 15 years of service. Where an Employee has less than seven years of continuous service in pay status, breaks in service of less than one year shall be aggregated. Where breaks in service aggregate to more than one year they shall be treated as a break in service of more than one year and the service prior to such breaks and the aggregated breaks shall not be used to calculate the 15 years of service. No break used to disqualify service shall be used more than once.

3.  The following time in which an Employee is not in pay status shall not constitute a break in service as specified in paragraph 2 above:

    a.  Time on a leave approved by the proper authority which is consistent with the Rules and Regulations of the New York City Personnel Director or the appropriate personnel authority of a covered organization.

    b.  Time prior to a reinstatement.

    c.  Time on a preferred list pursuant to Civil Service Law Sections 80 and 81 or any similar contractual provision.

    d.  Time not in pay status of 31 days or less.

    Notwithstanding the above, such time as specified in subsections a, b and c above shall not be used to calculate the 15 years of service.

DEF000130
- 12 0 0 6

4.  Once an Employee has completed the 15 years of "City" service in pay status and is eligible to receive the $800 longevity increment, the $800 shall become part of the Employee's base rate for all purposes except as provided in paragraph 5 below.

5.  The $800 longevity increment shall not become pensionable until fifteen months after the employee begins to receive such $800 increment.  Fifteen months after the Employee begins to receive the $800 longevity increment, such $800 longevity increment shall become pensionable and as part of the Employee's base rate, the $800 longevity increment shall be subject to the general increases provided in Article III, Section 4a of this Agreement.

## Appendix B

The following rules shall govern the eligibility of Employees for the Recurring Increment Payment
("RIP")
provided for in Article III, Section 11 of the 2008-2010 Motor Vehicle Operators Agreement.

1.  Only service in pay status shall be used to calculate the qualifying years of service. A continuous year of service shall be a full year of service without a break of more than 31 days. Where the regular and customary work year for a title is less than a twelve month year, such as a school year, such regular and customary year shall be credited as a continuous year of service counting towards the qualifying years of service. If the normal work year for an Employee is less than the regular and customary work year for the Employee's title, it shall be counted as a continuous year of service if the Employee has customarily worked that length work year and the applicable agency verifies that information.

2.  Part-time Employees shall be ineligible to receive RIPs, but prior part-time service shall be credited to full-time Employees on a pro rata basis, provided all other terms and conditions set forth herein are met.

    a.  An Employee must have regularly worked at least one half the regular hours of full time Employees in the same title or if no full-time equivalent title exists then at least 17 1/2 hours for white collar positions or 20 hours for blue collar positions.

    b.  Such part time service shall be prorated by dividing the number of hours worked per week by a part-time Employee by the number of hours worked per week by a full-time Employee in the same title. If no full-time equivalent title exists then the divisor shall be 35 hours for white collar positions or 40 hours for blue collar positions.

3.  Service in pay status prior to a break in service of more than one year shall not be used to calculate the qualifying years of service.

4.  The following time in which an Employee is not in pay status shall not constitute a break in service, but such time shall not be used to calculate the qualifying years of service.

    a.  time on a leave approved by the proper authority which is consistent with the Personnel Rules and Regulations of the City of New York or the appropriate personnel authority of a covered organization.

    b.  time prior to a reinstatement.

    c.  time on a preferred or recall list, and

    d.  Time not in pay status of 31 days or less.

5.  RIPS shall be considered a salary adjustment for the purposes of Article III, Section 1 (d) of this Agreement and the maximum salary of an eligible title shall not constitute a bar to the payment thereof.

6.     Once an Employee has qualified for a RIP and is receiving it, the RIP shall become part of the Employee's base rate and included in calculating all salary based payments, except as provided in paragraph 7 below.  Any future negotiated general increases shall be applied to RIPs.

7.     A RIP shall not become pensionable until two years after the Employee begins to receive such RIP.

DEF000133

**WHEREFORE,** we have hereunto set our hands and seals this 1̸ day of April , 2012.

FOR THE CITY OF NEW YORK AND RELATED
PUBLIC EMPLOYERS AS DEFINED HEREIN:

BY: _James F. Hanley_

JAMES F. HANLEY
Commissioner of Labor Relations

FOR DISTRICT COUNCIL 37
AFSCME, AFL-CIO

BY: _Lillian Roberts_

LILLIAN ROBERTS
Executive Director

FOR THE NEW YORK CITY
HEALTH AND HOSPITALS CORPORATION

BY: _Salvatore J. Russo_

SALVATORE J. RUSSO
Senior Vice President and General Counsel

APPROVED AS TO FORM:

BY: _Paul T. Rephen_

PAUL T. REPHEN
Acting Corporation Counsel

DATE SUBMITTED TO THE FINANCIAL CONTROL BOARD: _____, 2012.

**UNIT: Motor Vehicle Operators**

**TERM: March 3, 2008 – March 2, 2010**

OFFICE OF LABOR RELATIONS
REGISTRATION
OFFICIAL                    CONTRACT

NO:
**12006**

DATE:

2008-2010 Motor Vehicle Operators Agreement