UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Christopher Viera et al.,

                           **Plaintiffs,**

        -against-

City of New York,

                           **Defendant.**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/8/2021

1:19-cv-05773 (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

This is an action brought under the Fair Labor Standards Act ("FLSA") by four persons who claim to be owed overtime for work performed as employees of the New York City Fire Department ("FDNY"). Before the Court are a motion for summary judgment by plaintiffs Christopher Viera ("Viera"), Genadiy Mints ("Mints"), Devin Sparks ("Sparks") and Carl Graham ("Graham") (collectively, "Plaintiffs") (Pls.' Not. of Mot., ECF No. 71), and a motion for summary judgment by defendant City of New York ("City" or "Defendant"). (Def.'s Not. of Mot., ECF No. 75.)[1] For the reasons set forth below, these motions are DENIED.

---

[1] In connection with these motions, the Court has considered Plaintiffs' memorandum of law (Pls.' Mem., ECF No. 73); Plaintiffs' 56.1 Statement (Pls.' 56.1, ECF No. 72); Plaintiffs' moving Declaration, together with its exhibits (McGillivary 10/14/20 Decl., ECF No. 74); Defendant's memorandum of law (Def.'s Mem., ECF No. 77); Defendant's 56.1 Statement (Def.'s 56.1, ECF No. 76); Defendant's moving Declaration, together with its exhibits (Williams 10/14/20 Decl., ECF Nos. 78, 80); Plaintiffs' opposition memorandum of law (Pls.' Opp. Mem., ECF Nos. 84, 88); Plaintiffs' Counterstatement to Defendant's 56.1 Statement (Pls.' Counter 56.1, ECF Nos. 85, 89); Plaintiffs' additional 56.1 Statement (Pls.' Add. 56.1, ECF No. 86); Plaintiffs' opposing Declaration, together with its exhibits (McGillivary 11/20/20 Decl., ECF Nos. 87, 90); Defendant's opposition memorandum of law (Def.'s Opp. Mem., ECF No. 91); Defendant's Counterstatement to Plaintiffs' 56.1 Statement (Def.'s Counter 56.1, ECF No. 92); Defendant's opposition Declaration, together with its exhibits (Williams 11/20/20 Decl., ECF No. 93); Plaintiffs' reply memorandum of law (Pls.' Reply, ECF Nos. 96, 97); Defendant's reply memorandum of law (Def.'s Reply, ECF No. 94); and Defendant's Counterstatement to Plaintiffs' additional 56.1 Statement. (Def.'s Add. Counter 56.1, ECF No. 95.)

**RELEVANT FACTS**

**I.     Background Facts**

Plaintiffs are FDNY employees who have held the civil service title of Motor Vehicle Operator ("MVO") at some point since June 21, 2016, and have been assigned to the Fleet Services Bureau ("Fleet Services") and/or the Technical Services Bureau ("Tech Services") for some or all of that time period. (Def.'s Counter 56.1 ¶ 1; Pls.' Counter 56.1 ¶ 1.) Plaintiffs Viera and Mints have been assigned to Tech Services for the entirety of the period from June 21, 2016 to the present, and currently hold the civil service title of City Laborer. (Pls.' Counter 56.1 ¶ 7.) During the period from June 21, 2016 to the present, Plaintiff Sparks first was assigned to Fleet Services, and currently is assigned to Tech Services, where he holds the civil service title of City Laborer. (*Id*. ¶ 9.) Plaintiff Graham has been assigned to Fleet Services for the entirety of the period from July 29, 2016 to the present, where he holds the civil service title of MVO. (*Id*. ¶ 8.)

The duties and responsibilities of Tech Services MVOs[2] include operating motor vehicles, maintaining motor vehicles, performing motor vehicle inspections and light maintenance on vehicles, and transporting medical oxygen tanks and other Emergency Medical Service ("EMS") supplies to and from the oxygen tank refill center and firehouses/EMS stations throughout the City. (Def.'s Counter 56.1 ¶ 7; Pls.' Counter 56.1 ¶ 14.) The duties and responsibilities of Fleet Services MVOs include operating motor vehicles, maintaining motor vehicles, performing motor

---

[2] Effective June 3, 2019, Plaintiffs assigned to Tech Services received a change in title, from MVO to City Laborer, as a result of a grievance filed on behalf of Viera and Mints. (Pls.' Counter 56.1 ¶ 11.) Following this change, Viera, Mints and Sparks received a pay increase and back pay representing the difference between the salary of an MVO and the salary of a City Laborer, but their day-to-day responsibilities did not change. (*Id*. ¶¶ 12-13.) For ease of reference, this Opinion and Order will refer to Plaintiffs Viera, Mints and Sparks as "Tech Services MVOs," and to all Plaintiffs as "MVOs," notwithstanding the title change.

2

vehicle inspections and light maintenance on vehicles, transporting fire apparatus and ambulances between firehouses/EMS stations and repair facilities for routine maintenance or when the vehicles need repair, and transporting employees between FDNY locations. (Def.'s Counter 56.1 ¶ 6; Pls.' Counter 56.1 ¶ 15.)

Normally, MVOs are scheduled for 8.5-hour shifts, inclusive of an unpaid thirty-minute meal period, with two regularly scheduled days off per week. (Def.'s Counter 56.1 ¶ 4; Pls.' Counter 56.1 ¶¶ 22-23.) At present, due to the COVID-19 pandemic, Plaintiffs assigned to Tech Services are temporarily scheduled to work four days per week in 10.5 hour shifts, inclusive of an unpaid thirty-minute meal period. (Def.'s Counter 56.1 ¶ 5; Pls.' Counter 56.1 ¶ 25.)

CityTime is the City's proprietary electronic timekeeping and payroll system, which the vast majority of City employees use to record their work time. (Pls.' Counter 56.1 ¶ 28.) The FDNY has required Plaintiffs to use the CityTime timekeeping system since 2007.[3] (Def.'s Counter 56.1 ¶ 22; Pls.' Counter 56.1 ¶ 30.) Plaintiffs used CityTime to clock in when they arrived at their assigned work location and clock out when they left their assigned work location. (Def.'s Counter 56.1 ¶ 26.) All minutes from the time that a Plaintiff punched in at his work location to the time he punched out at his work location were captured in CityTime. (*Id*.) However, under the City's pay system, Plaintiffs were not compensated for all of their time recorded in CityTime; instead, under a default "pay-to-schedule" system, they were paid according to their regular shifts, unless they indicated there was an exception to that schedule—*i.e.*, unless they indicated that they had worked overtime or had taken time off. (*See id*. ¶ 27.) Any time recorded in CityTime that fell

---

[3] Due to the COVID-19 pandemic, since March 2020, Plaintiffs assigned to Tech Services have used paper punch cards in addition to CityTime. (Def.'s Counter 56.1 ¶ 23.)

outside of an employee's regular work schedule would be reflected in CityTime as "noncompensable" unless the employee submitted an overtime request for that time and that request was approved. (*See* Def.'s Counter 56.1 ¶ 28; Pls.' Counter 56.1 ¶ 34.) Plaintiffs knew how to submit requests for overtime payment in CityTime. (Pls.' Counter 56.1 ¶ 72.) In addition, supervisors had the capability to submit overtime requests on behalf of the employees they supervised. (Def.'s Counter 56.1 ¶ 29.)

Citing to their deposition testimony, Plaintiffs contend that "the City does not provide guidance or documents explaining how to submit overtime requests for pre-shift and meal-period work that has not been pre-approved." (*See* Pls.' 56.1 ¶ 65.) The City disputes this contention and asserts that it "is the City's policy to pay employees for overtime worked, regardless of pre-approval." (*See* Def.'s Counter 56.1 ¶ 28.)

## II. Plaintiffs' Alleged Uncompensated Work

Each Plaintiff testified that he regularly performed work prior to his shift. (*See* Viera Tr. 24-25, 63-64, 70, 98-99; Mints Tr. 35, 42-47, 49-51, 59; Sparks Tr. 55, 71, 74-75, 82-83, 86-88; Graham Tr. 52, 54, 60-63.[4]) This work included, for example, locating and moving the vehicle he was to drive on any given day, inspecting the vehicle (*e.g.*, tire pressure, fluids and lights) and/or warming up the vehicle. (*See id.*) Because the City has a record of when each Plaintiff clocked in every day, Plaintiffs contend that they can calculate from the City's own records the exact amount of back pay they are due for the work they performed prior to the beginning of their shifts. (*See* Pls.' 56.1 ¶ 39 & Lanier 10/12/20 Decl., ECF No. 74-9.)

---

[4] Excerpts from the Plaintiffs' deposition transcripts are attached as Appendix I to the McGillivary 10/14/20 Declaration. (*See* ECF No. 74-1.)

Each Plaintiff also testified that he regularly performed work during his uncompensated meal periods. (*See* Viera Tr. 78-79, 82; Mints Tr. 35, 63-64, 68, 70; Sparks Tr. 100, 102, 106; Graham Tr. 82-83.) Plaintiffs asserted that this work was made necessary by, for example, the volume of their work and/or the logistical difficulty of parking their vehicles in order to eat. (*See id*.)

The City denies having any knowledge of Plaintiffs' performance of uncompensated pre-shift work, asserting that Plaintiffs knew how to submit requests for overtime and in fact had been compensated for overtime work performed outside of their scheduled shifts. (*See* Def.'s Counter 56.1 ¶¶ 33-36.) The City likewise asserts that employees were compensated for performing work during their meal periods if they submitted overtime requests within CityTime to receive compensation, or if the City otherwise became aware of their work.[5] (*See* Def.'s Counter 56.1 ¶¶ 44-47.) The City submits an expert declaration asserting that over 94% of the overtime requests that Plaintiffs submitted in CityTime during the relevant time period were approved. (*See* Erath Decl., ECF No. 78-29, ¶ 11(G).)

III.   **Pay Differentials**

Plaintiffs are eligible to earn pay differentials, including "vehicle differentials" and "night shift differentials," through their employment with the City. (Def.'s Counter 56.1 ¶ 73.) Under the FLSA, such differentials are to be factored into the calculation of an employee's base rate for a given workweek (the "regular rate"), which then is multiplied by 1.5 in order to determine the

---

[5] One of the City's Rule 30(b)(6) witnesses testified that the City conducted audits to identify those FDNY employees who received overtime by working during their meal periods, and that supervisors would seek to "curtail such activity" by having conversations with those employees. (*See* Manna 30(b)(6) Tr., ECF No. 74-2, at 42-46.)

appropriate overtime pay rate for that employee for that workweek. (*See* Lanier 10/12/20 Decl. ¶ 14.) In support of their motion, Plaintiffs submit an expert declaration to argue that the City did not factor in differential pay when calculating this "regular rate" for weeks in which Plaintiffs both earned differential pay and worked overtime, with the result being that Plaintiffs were underpaid for those weeks. (*See* Pls.' 56.1 ¶ 78 (citing Lanier 10/12/20 Decl. ¶ 14); *see also* Pls.' Reply at 9 ("[P]laintiffs assert that when they are paid differentials, [those differentials] are improperly excluded from the regular rate calculation." (emphasis omitted)).) Plaintiffs contend that they are owed $477.17 of total back pay for the City's failure to properly calculate their FLSA regular rate of pay. (*See* Lanier 10/12/20 Decl. ¶ 15.)

In response, the City asserts that "CityTime automatically includes night-shift and vehicle differentials in employees' regular rates of pay for the purposes of calculating overtime compensation." (Def.'s Counter 56.1 ¶ 76.) Citing to a declaration by its expert, the City argues that "Plaintiffs appear to admit that the vehicle differential was included in Plaintiffs' regular rate of pay for the purposes of calculating overtime, [since they] do not attribute any damages to the City's alleged failure to account for vehicle differentials in calculating overtime pay." (Erath Decl. ¶ 11(J).) With respect to the night shift differential, the City argues that Plaintiffs' expert declaration "is devoid of any evidence of how he concludes that night-shift differential was not included within the regular rate of pay." (Def.'s Opp. Mem. at 10.)

**IV.**     **FLSA Compliance By The City**

The parties dispute whether the City has made good faith efforts to comply with the FLSA. The City points to efforts made by its Law Department to advise City agencies about FLSA compliance, including in connection with CityTime. (*See* Def.'s 56.1 ¶¶ 96-99.) Plaintiffs argue

that there is no evidence that the City gave advice to anyone at the FDNY regarding FLSA compliance. (*See* Pls.' Counter 56.1 ¶ 96.) In addition, Plaintiffs note that the City has been sued multiple times in the past eight years based on allegations that employees were performing work without proper compensation in violation of the FLSA, and that the City has been found liable in or settled many of those cases. (*See* Pls.' 56.1 ¶¶ 80-82.)

## LEGAL STANDARDS

**I.      Summary Judgment**

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23, (1986). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). A dispute concerning material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. (quoting *Anderson*, 477 U.S. at 248). "In resolving cross-motions for summary judgment, 'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'" *Automated Irrigation Controls, LLC v. Watt Stopper, Inc.*, 407 F. Supp. 3d 274, 201 (S.D.N.Y. 2019) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

Federal Rule of Civil Procedure 56(a) permits a party to make a motion for partial summary judgment regarding only certain issues in the case. Rule 56(a) provides that "[a] party

may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

## II. **FLSA**

With respect to overtime, Section 7(a) of the FLSA provides, in relevant part, that

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). "In order to establish liability for unpaid overtime under the FLSA, a plaintiff must do two things." *Lawtone-Bowles v. City of New York*, No. 16-CV-04240 (AJN), 18-CV-04338 (AJN), 2020 WL 2833366, at *2 (S.D.N.Y. June 1, 2020). "First, 'a plaintiff must prove that he performed work for which he was not properly compensated.'" *Id*. (quoting *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 361 (2d Cir. 2011)). "Second, a plaintiff must show 'that the employer had actual or constructive knowledge of that work.'" *Id*. (quoting *Kuebel*, 643 F.3d at 361). "Both of these elements are questions of fact." *Id*. (citing *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 521 (2d Cir. 1998)).

Under the FLSA, cash overtime must amount to "a rate not less than one and one-half times the regular rate at which [the worker] is employed." 29 U.S.C. § 207(a)(1). The "regular rate" "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," less eight enumerated exemptions that are not applicable here. *See* 29 U.S.C. § 207(e). Thus, when calculating an employee's "regular rate" of pay for the purposes of section 207, an employer is required to include "extra compensation, such as nightshift differentials" that were included in the employees straight-time wage rate. 29 C.F.R. § 778.207(b); *see also*

8

*Scott v. City of New York*, 592 F. Supp. 2d 386, 409 (S.D.N.Y. 2008) ("[S]hift differentials do not fall into one of the discrete categories of compensation that may be excluded from the regular rate.").

An employer who violates the FLSA "shall be liable" for unpaid overtime wages in "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), but an employer can avoid such an award by proving that the violation was the result of a good faith error. *See id*. § 260. If a defendant is found to have willfully violated the FLSA, then a plaintiff is entitled to a three-year statute of limitations, instead of the default two years. *See* 29 U.S.C. § 255(a). However, "[c]ourts in this Circuit have generally left the question of willfulness to the trier of fact." *Lawtone-Bowles*, 2020 WL 2833366, at *5 (citing *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008)).

## DISCUSSION

The Court addresses below each of the claims and issues as to which the parties seek summary judgment.

### I. Unpaid Overtime Claim

In Count I of the Second Amended Complaint ("SAC"), which is the operative pleading, Plaintiffs allege that, in violation of Section 7(a) of the FLSA, 29 U.S.C. § 207(a), (1) "during those workweeks in which Plaintiffs have worked hours in excess of forty (40) hours a week, they have performed work activities . . . without compensation before the start of their shifts," and (2) they also "have performed work during their unpaid meal periods, causing them to work in excess of forty (40) hours in a given week." (SAC, ECF No. 37, ¶¶ 32-37.) Plaintiffs and Defendant each seek summary judgment as to Count I.

Plaintiffs contend that "the undisputed facts in this case [show] that the plaintiffs performed uncompensated work with the City's knowledge," thereby entitling them to summary judgment on Count I. (*See* Pls.' Mem. at 18.) The Court disagrees. To prevail on Count I, Plaintiffs must prove not only that they actually "performed work" prior to their shifts and during meal breaks, "for which [they were] not properly compensated," but also that the City "had actual or constructive knowledge of that work." *Kuebel*, 643 F.3d at 361. Plaintiffs cannot establish such knowledge, as a matter of law, on this record. Even assuming that Plaintiffs' supervisors were aware of Plaintiffs' clock in and out times and/or witnessed Plaintiffs at the workplace outside their shift hours (*see* Pls.' Mem. at 10), it cannot be said, as a matter of law, that these supervisors had knowledge of overtime work for which Plaintiffs were not compensated.[6] It is plausible, as Defendant argues, that "[e]ven if supervisors may have seen Plaintiffs physically present at their workplace and even performing work, they had no reason to believe Plaintiffs were performing uncompensated work," given that Plaintiffs "knew how to, and routinely did, seek compensation for time worked outside of their shift." (Def.'s Opp. Mem. at 8 (emphasis omitted).) Further, while Plaintiffs argue that the City's knowledge can be established by the fact that Plaintiffs' supervisors "review [P]laintiffs' timesheets on a weekly basis" and therefore know when "[P]laintiffs [a]re not compensated for overtime work that [the supervisors] themselves assigned and/or

---

[6] Unlike several cases they rely on, Plaintiffs cite no testimony from a supervisor confirming such knowledge. *See, e.g.*, *Foster v. City of New York*, No. 14-CV-04142, 2017 U.S. Dist. LEXIS 227758, at *73 (S.D.N.Y. Sept. 30, 2017) (citing a supervisor's testimony that "if the workers come in [] early, my manager tends to say, '[O]h, they're volunteering their time,'" and that both she and her manager were "aware" that these supervisees "are performing work without receiving compensation"); *Perez v. City of New York*, No. 12-CV-04914 (PAE), 2017 WL 4326105, at *12 (S.D.N.Y. Sept. 27, 2017) (citing a supervisor's testimony "that he was 'sure' that there were instances when [supervisees] worked overtime but did not request it"). In any event, all case law considerations aside, the Court finds that, on the present record, there are issues of fact that preclude summary judgment from being granted.

witnessed" (Pls.' Mem. at 10), the City responds that the supervisor that reviews a given Plaintiff's timesheet "is not necessarily [that] Plaintiff's immediate supervisor, and may not even be present at work during the same hours as [that] Plaintiff." (Def.'s Reply at 5.) Thus, genuine issues of material fact preclude summary judgment in favor of Plaintiff on Count I.

For its part, Defendant argues that it is entitled to summary judgment on Count I because "it is undisputed that the allegedly uncompensated work time at issue in this case was not reported to the City through its timekeeping system, and therefore, the City did not have the requisite knowledge to establish liability." (Def.'s Mem. at 4.) "The City has made this [same] argument repeatedly in FLSA overtime litigation in this District and it has been unanimously rejected." *Lawtone-Bowles*, 2020 WL 2833366, at *4. Here, as in *Lawtone-Bowles*, the record evidence—including Plaintiffs' testimony that their supervisors, *e.g.*, assigned pre-shift and mealtime work tasks, reviewed time sheets on a weekly basis, and gave instructions not to submit overtime requests for work that was not pre-approved (*see* Pls.' Mem. at 10, 12)—could, if credited, allow "[a] reasonable factfinder [to] conclude that Plaintiffs worked uncompensated overtime, that Defendant had actual or constructive knowledge of this time, and that Defendant discouraged the reporting of accurate overtime that was not pre-approved." *See id.* at 3-4. Thus, Defendant's motion for summary judgment seeking to dismiss Count I of the SAC is denied as well.

**II.      Calculation Of Regular Rate Of Pay For Overtime Compensation**

In Count II of the SAC, Plaintiffs allege that Defendant has failed to include night shift and vehicle differential pay in Plaintiffs' regular rates of pay for purposes of computing Plaintiffs'

11

overtime pay entitlements in violation of Section 7(a) of the FLSA. (*See* SAC ¶¶ 38-42.) Plaintiffs and Defendant each seek summary judgment as to Count II.

Plaintiffs contend that "Defendant's own payroll data demonstrates that the City did not include the plaintiffs' night shift and vehicle differentials in the regular rate of pay," and that, based upon this data, Plaintiffs "are owed $477.17 for the City's violation." (Pls.' Mem. at 19 (citing Pls.' 56.1 ¶¶ 78-79).) In their 56.1 statement on this point, Plaintiffs cite to the Declaration of their expert, Louis Lanier. (Pls.' 56.1 ¶¶ 78-79 (citing Lanier 10/12/20 Decl. ¶¶ 14-15).) Lanier makes reference in his Declaration to three expert reports he prepared in this case "along with the backing data and computer programs for [his] calculations." (*Id*. ¶ 6.) However, his expert reports and data are not part of the summary judgment submissions, and from his Declaration alone, "[i]t is unclear how he reached his conclusions." *See Murray v. City of New York, New York*, No. 16-CV-08072 (PKC), 2020 WL 615053, at *9 (S.D.N.Y. Feb. 10, 2020) (finding that expert declaration from Lanier left the Court "in no position to assess whether his figures are useful and reliable").

In its summary judgment motion, Defendant argues that "Plaintiffs have not adduced any admissible evidence that night-shift or vehicle differentials were excluded from the regular rate for calculating overtime," that "[Plaintiffs] do not attribute any damages to the City's alleged failure to account for vehicle differentials in calculating overtime pay," and that "the record is clear that the night-shift differential is included in the employees' regular rate of pay for the purposes of calculating overtime compensation." (Def.'s Opp. Mem. at 14.) In making these arguments, Defendant relies in part upon the Declaration of its expert, Christopher Erath. (*See id*.) In his Declaration, Erath states that he was retained by Defendant to analyze a report from

12

Lanier, dated April 2, 2020, and that Erath prepared a rebuttal report to Lanier's report. (Erath Decl. ¶¶ 3-4.) Erath also states that he reviewed two supplemental reports prepared by Lanier, as well as "Plaintiffs' complete CityTime records." (*Id.* ¶¶ 6-7.) Although Erath's rebuttal report was made part of the summary judgment record by Plaintiffs (*see* Erath Report, ECF No. 87-3), his backup calculations and the data on which he relied were not. Plaintiffs' CityTime records also are not part of the summary judgment submissions.

In opposition to Defendant's summary judgment motion, Plaintiffs seek to strike the substantive portions of the Erath Declaration (*i.e.*, paragraphs 8 through 11) "because they reflect inadmissible, previously undisclosed expert calculations." (Pls.' Opp. Mem. at 23.) In the alternative, Plaintiffs seek to have the City "disclose any backup calculations completed by Dr. Erath" and seek to depose Dr. Erath regarding paragraphs 8 through 11 of his Declaration.[7] (*Id.*)

The summary judgment record before the Court is not adequate for the Court to determine as a matter of law whether, as Plaintiffs contend, they are owed $477.17 on Count II of the SAC. (*See* Pls.' Mem. at 19.) As mentioned previously, the Lanier expert reports and the data upon which he relied are not before the Court; nor are the backup calculations performed by Erath or the data upon which he relied. Thus, there is an insufficient evidentiary basis for the Court to assess the expert Declarations filed by the parties.

"An expert's opinions that are without factual basis and are based on speculation or conjecture are . . . inappropriate material for consideration on a motion for summary judgment,"

---

[7] In opposition to Defendant's summary judgment motion, Plaintiffs submitted a second Declaration from Lanier, in which he responds to Erath's Declaration. (*See* Lanier 11/13/20 Decl., ECF No. 87-2.) In his second Declaration, Lanier notes that he is "unable to exactly replicate [Erath's] calculated figures" and "cannot explain the discrepancies because Dr. Erath's programming code, which he used for processing the data and making his calculations, has not been made available to [Lanier]." (*Id.* ¶ 7.)

13

as are "[a]n expert's conclusory opinions." *Major League Baseball Props., Inc. v. Salvino*, Inc., 542 F.3d 290, 311 (2d Cir. 2008). In order to ensure that an expert's opinion is not too speculative or conclusory to merit consideration, "the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). The current record does not permit the Court to undertake this analysis. Thus, the Court denies both Plaintiffs' and Defendant's summary judgment motions.

However, the Court will order the City to produce to Plaintiffs any backup calculations completed by Erath, and Plaintiffs shall be given leave to take Erath's deposition regarding paragraphs 8 through 11 of his Declaration, not to exceed three hours. Thereafter, either Plaintiffs or Defendant may make an *in limine* motion regarding the expert witnesses and/or Count II on a complete record.

### III.  Liquidated Damages And Willfulness

Both sides seek summary judgment on the issues of liquidated damages and willfulness.

Plaintiffs argue that, because Defendant has "brazenly violated" the FLSA, Plaintiffs are entitled to liquidated damages. (*See* Pls.' Mem. at 19-21.) They also argue that, because Defendant's conduct was willful, Plaintiffs are entitled to a three-year statute of limitations. (*See id*. at 22-23.) However, because Plaintiffs' motion for summary judgment is denied as to their FLSA claims, it is premature for the Court to address Plaintiffs' liquidated damages claims or the issue of willfulness. Thus, Plaintiffs' motion for summary judgment on liquidated damages and willfulness is denied. *See Lawtone-Bowles*, 2020 WL 2833366, at *5 ("Because Plaintiffs' motion

14

for summary judgment is denied on the underlying unpaid overtime violations, their motion for summary judgment on liquidated damages and willfulness is also denied.").

Defendant's motion for summary judgment on liquidated damages and willfulness is denied as well. Although Defendant argues that its efforts to, *e.g.*, provide CityTime training and consult with counsel to ensure FLSA compliance demonstrate the City's subjective good faith and lack of willfulness (*see* Def.'s Mem. at 14-19), there is ample evidence in the record that a reasonable factfinder could weigh against Defendant on these issues, as set forth in the memorandum submitted by Plaintiffs in support of their motion for summary judgment. (*See* Pls.' Mem. at 19-23.) By way of example, "Defendant has been sued several times before regarding nearly identical allegations." *Lawtone-Bowles*, 2020 WL 2833366, at *5. "From this evidence, a reasonable factfinder could conclude that Defendant lacked the requisite subjective good faith and objective reasonableness, and willfully violated the FLSA." *Id*.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (ECF No. 71) and Defendant's motion for summary judgment (ECF No. 75) are DENIED. Within 10 days of the date of this Opinion and Order, Defendant shall produce to Plaintiffs any backup calculations completed by Erath in preparing his Declaration (ECF No. 78-29). Thereafter, within 20 days of such production, Plaintiffs may take Erath's deposition regarding paragraphs 8 through 11 of his Declaration, not to exceed three hours.

The parties shall appear for a telephone conference on February 23, 2021, at 2:00 p.m., to address the remaining schedule for this case. At the scheduled time, the parties shall call (888) 278-0296 (or (214) 765-0479) and enter access code 6489745.

**SO ORDERED**.

Dated:       January 8, 2021
               New York, New York

_____
STEWART D. AARON
United States Magistrate Judge