# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

CHRISTOPHER VIERA, et al.,

                                      Plaintiffs,    **SETTLEMENT AGREEMENT**

        -against-                                    19 Civ. 05773 (SDA)

THE CITY OF NEW YORK,

                                      Defendant

------------------------------------------------------------------- x

**SETTLEMENT AGREEMENT**

      This Settlement Agreement ("Agreement") is made and entered into by and among the Plaintiffs in the above-captioned case, who are identified in Exhibit A attached hereto, and who are all persons who have timely consented to be party Plaintiffs in the above-captioned case, and Defendant, the City of New York and all other New York City departments, commissions, agencies, related entities, predecessors, successors, trustees, members, officers, directors and employees, agents, assigns, representatives, employee benefit plans and the trustees, administrators, and fiduciaries of such plans (hereinafter collectively referred to as "Defendant"), and is based on the following:

**I.     RECITALS**

    1.1    Plaintiffs are four individuals employed or formerly employed by the Defendant. On June 20, 2019 and July 29, 2019, Plaintiffs filed their consent to sue forms with this Court in this action. Exhibit A contains a list of all Plaintiffs and the dates on which they filed their consent forms with this Court.

1.2     Plaintiffs listed in Exhibit A have made certain allegations concerning their employment with the Defendant regarding an asserted failure to pay wages and overtime compensation in compliance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. (hereinafter referred to as the "Released Claims").

1.3     Plaintiffs and Defendant (hereinafter collectively referred to as the "Parties") have agreed to settle the matters in dispute between and among them pursuant to the terms of this Agreement.  Specifically, the Parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement, and dismissal of the Plaintiffs' claims with prejudice.  The Parties have concluded that the terms of this Agreement are fair, reasonable, adequate, and in the Parties' mutual best interests.

1.4     The Parties, through their counsel, hereby seek judicial approval of this Settlement Agreement.  In the event the proposed settlement contained in this Agreement does not become effective in accordance with the terms hereof, is not finally approved, is terminated, cancelled or otherwise fails to become effective for any reason, this Agreement will no longer have any effect and the Parties will revert to their respective positions as of the date and time immediately prior to the execution of this Agreement.

## II.     PAYMENT AND DISTRIBUTION

2.1     In consideration for the terms, conditions and promises in this Agreement, Defendant shall, in accordance with the paragraphs in this section pay or will cause to be paid to Plaintiffs **$429,901.18** to resolve all claims for FLSA damages allegedly accruing for the period from June 20, 2016 through July 20, 2021 ("the Settlement Amount"), inclusive of backpay, liquidated damages, attorneys' fees and litigation expenses.  The Settlement Amount will be divided and distributed to Plaintiffs as follows:

2

(a) **$74,404.39** ("the Backpay Amount"), less all applicable deductions and withholdings for each individual plaintiff, to be divided among the Plaintiffs in accordance with Plaintiffs' Counsel's instructions regarding each Plaintiff's share of the backpay award. For currently employed (active) Plaintiffs, Defendant will issue those Plaintiffs a set of payroll checks and/or stubs for direct deposit payments or regular payroll checks. For separated (inactive) Plaintiffs, Defendant will issue Plaintiffs' counsel a lump sum payment, deductions and withholdings for each individual Plaintiff, along with a listing of backpay amounts owed to each inactive employee after deductions, and a listing of the deductions and withholdings for each Plaintiff. Plaintiffs' Counsel will distribute the net backpay payments to inactive Plaintiffs.

(b) one check in the amount of **$355,496.79** constituting liquidated damages, attorneys' fees and litigation expenses ("Lump Sum Amount") payable to Plaintiffs' Counsel McGillivary Steele Elkin LLP for distribution to the plaintiffs as follows:

(i) **$66,963.95** of the Lump Sum Amount will be distributed to the Plaintiffs in accordance with Exhibit A as liquidated damages;

(ii) **$261,416.53** of the Lump Sum Amount will be distributed to Plaintiffs' counsel as attorneys' fees; and

(iii) **$27,116.31** of the Lump Sum Amount will be distributed to Plaintiffs' Counsel for reimbursement of litigation expenses.

(c) The individual amount of backpay and liquidated damages to be awarded to each Plaintiff were calculated by Plaintiffs' Counsel based on the actual payroll records of each Plaintiff as provided by the City, and are set forth as an attachment to this Settlement Agreement as Exhibit A. These amounts are agreed to among the Parties to compromise, settle and satisfy the Released Claims and liquidated damages related to the Released Claims.

2.2    Within five (5) days of the date that the Court enters an Order finally approving this Agreement, the Plaintiffs shall tender, by overnight mail, e-mail attachment or hand-delivery, to Defendant's attorneys, the following document to effectuate payment of the settlement amounts referenced in paragraph 2.1: a listing of the distribution amounts to each individual Plaintiff along

with each Plaintiff's social security number and current addresses for Plaintiffs who are no longer employed by Defendant. Defendant shall issue payment by distributing the backpay amounts (not liquidated damages) in regular payroll checks or direct deposit payments directly to active Plaintiffs and issuing a lump sum payment to Plaintiffs' Counsel for the backpay amounts owed to separated (inactive) employees, and by providing by check to Plaintiffs' law firm, McGillivary Steele Elkin LLP, the Lump Sum Amount for all of the Plaintiffs as specified in paragraph 2.1. In the event that a Plaintiff's backpay amount or liquidated damages amount will be reduced as the result of wage garnishment, lien or judgment (to the extent set forth in paragraph 2.1), Defendant's counsel shall make a good faith effort to provide Plaintiffs' counsel with: (1) the name of the Plaintiff; and (2) the amount of the reduction and the nature of the reduction at or before the time the payment is made by Defendant. The Settlement Amount will be paid within 90 days of the date that the Court enters an Order finally approving this Agreement.

      2.3      Defendant will forward the Lump Sum Amount payable to McGillivary Steele Elkin LLP as Plaintiffs' Counsel via First Class United States Mail, and Plaintiffs' Counsel shall be responsible for distributing to each Plaintiff listed in Exhibit A his respective share of the Liquidated Damages Amount. Defendant will notify Plaintiffs' counsel, at least 14 calendar days prior to distribution of the backpay amount, of the exact date when each active (employed) Plaintiff will be paid. At the time of payment, the Defendant will provide Plaintiffs' Counsel with a listing of the withholdings and deductions for separated (inactive) employees, and the net backpay amount for each separated (inactive) Plaintiff and Plaintiffs' Counsel will provide this information to separate (inactive) Plaintiffs. Defendant will provide a list to Plaintiffs' Counsel of the Plaintiffs who are paid by direct deposit and the Plaintiffs who are paid via payroll check so that Plaintiffs' counsel can verify payment.

      2.4      For purposes of computing damages, "the relevant recovery period" for calculating each individual Plaintiff's recovery begins three years prior to the date when each Plaintiff's Consent to Sue form was filed with the Court, or the date on which any Plaintiff began working for the New York City Fire Department as a Motor Vehicle Operator or Laborer, whichever is later. Each

4

individual Plaintiff's recovery ends on July 20, 2021, or the date on which any Plaintiff ceased working for the New York City Fire Department as a Motor Vehicle Operator or Laborer, whichever is earlier.

2.5     Plaintiffs and their counsel, McGillivary Steele Elkin LLP and Spivak Lipton LLP, will defend, release, and hold Defendant harmless from any and all claims or causes of action arising from the distribution of settlement funds.

2.6     Defendant shall distribute W-2 forms to the Plaintiffs reflecting the backpay payments made under Paragraphs 2.1(a) in this Agreement.  Plaintiffs' Counsel shall distribute to each Plaintiff receiving a liquidated damage award a Miscellaneous Income Form 1099 reflecting the amount paid to the Plaintiff as liquidated damages and their proportional share of the attorneys' fees paid.  Each Plaintiff agrees that he or she will be responsible for his or her individual tax liability associated with the payments made to him or her under this Agreement.  Plaintiffs and Plaintiffs' Counsel agree that they shall indemnify and hold harmless Defendant in the event of any dispute concerning whether taxes are owed by any Plaintiff on the liquidated damages paid as part of the settlement.

2.7     All payments to Plaintiffs shall be deemed to be paid solely in the year in which such payments are actually received by Plaintiffs.  It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Plaintiff to additional compensation or benefits under any bonus, contest, or other compensation or benefit plan or agreement in place during the period covered by the Agreement, nor will it entitle any Plaintiff to any increased retirement or matching benefits, or deferred compensation benefits.  It is also expressly understood and agreed that no pension contributions shall be taken from the backpay payments.  It is the intent of this Agreement that the settlement payments provided for in this Agreement are the sole payments to be made to the Plaintiffs, and that the Plaintiffs are not entitled to any new or additional compensation

or benefits as a result of having received payment pursuant to this Agreement (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the time period beginning three (3) years prior to the filing date of each Plaintiff's consent to sue form through July 20, 2021). Plaintiffs specifically waive entitlement to such benefits and in additional consideration for the mutual covenants made in this Agreement, hereby agree not to bring any further action against Defendant or any retirement or welfare benefit plan maintained by Defendant or any of its affiliates for additional benefits as a result of any additional compensation paid as a result of this Agreement. This Agreement may be used by the Defendant or by any benefit plan or fiduciary thereof as a complete and absolute defense to any such claim.

### III. RELEASE AND COVENANT NOT TO SUE

3.1     All Plaintiffs for themselves, and their spouses and families, attorneys (if any), agents, executors, administrators, personal representatives, heirs, successors, any future estates, assigns and beneficiaries, and any and all of them (collectively, the "Releasers"), voluntarily and with the advice of counsel, fully and forever release, acquit, and discharge the Defendant, their present or former officers, directors, subsidiaries, affiliates, partners, employees, agents, attorneys, accountants, executors, administrators, personal representatives, heirs, successors and assigns, and any or all of them and all persons acting by, through, under, or in concert with any of them (collectively, the "Releasees"), in their personal, individual, official and/or corporate capacities, from all wage and hour claims asserted in the Lawsuit, and all federal, state and/or local statutory wage and hour claims that could have been asserted in the Lawsuit arising from the beginning of time up to and through July 20, 2021.

3.2     All Plaintiffs shall be deemed to and shall have waived, released, discharged and dismissed all Released Claims as set forth in Paragraph 3.1, with full knowledge of any and all rights

they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved or with regard to any facts which are now unknown to them.

    3.3    All Plaintiffs understand and agree that to the fullest extent permitted by law, they are precluded from filing or pursuing any legal claim or action of any kind against any entity at any time in the future, or with any federal, state or municipal court, tribunal or other authority arising out of the Released Claims for the time period beginning three (3) years prior to the filing date of each Plaintiff's Consent to Sue form through July 20, 2021, with respect to the claims asserted in this Lawsuit. Excluded from this release and covenant not to sue is any right or claim that cannot be waived by law, including but not limited to the right to file a charge with or participate in an investigation conducted by government agencies. All Plaintiffs are waiving, however, any right to monetary recovery should any agency pursue any claims on their behalf with respect to the Released Claims for the time period beginning three (3) years prior to the filing date of each Plaintiff's Consent to Sue form through July 20, 2021.

    3.4    All Plaintiffs agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Each Plaintiff affirms that he/she has not been coerced, threatened, or intimidated into agreeing to the terms of this Agreement, and he/she has been advised to consult with their attorney should they have any questions.

### IV.    DISMISSAL OF CLAIMS

    4.1    Plaintiffs agree to dismissal of all claims asserted in the Lawsuit against Defendant as specified in paragraph 3.1 with prejudice, in accordance with the attached Agreed Order of Dismissal with Prejudice.

V.    **NO ADMISSION OF LIABILITY**

5.1    Nothing contained herein shall be deemed to be an admission by the City of New York, or any of the present or former officials, employees, representatives and agents of the City of New York of the truth of any of the allegations contained in the complaint, or an admission that Defendant or any of the present or former officials, employees, representatives and agents of the City of New York have in any manner or way violated Plaintiffs' rights, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York or the City of New York.  This Agreement shall not be admissible in, nor is it related to, any other litigation or settlement negotiations, except that this Agreement may be used by either party in connection with any subsequent action or proceeding relating solely to the enforcement of this Agreement.

VI.    **NO RETALIATION**

6.1    The Defendant agrees not to retaliate against nor take any action against any Plaintiff employed by the Defendant for pursuing claims in this action or for otherwise participating in the lawsuit.

VII.    **CONTINUED JURISDICTION**

7.1    The U.S. District Court for the Southern District of New York shall have continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement, and to hear and adjudicate any dispute or litigation arising from this Agreement or the issues of law and facts asserted in or related to the instant action.

VIII.    **PARTIES' AUTHORITY**

8.1    The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof. The Parties

acknowledge that the Court will review this Agreement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Plaintiffs' counsel represents that they have notified the Plaintiffs of the terms of this Agreement and all Plaintiffs agree to its terms.

8.2     All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

IX.     **MUTUAL FULL COOPERATION**

9.1     The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

X.      **ENFORCEMENT ACTIONS**

10.1    In the event that one or more of the Parties to this Agreement institutes any legal action, arbitration, or other proceeding against any other party or parties to enforce the provisions of this Agreement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties' reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

XI.     **MODIFICATION**

11.1    This Agreement and its attachments may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

## XII. ENTIRE AGREEMENT

12.1 This Agreement and its attachments constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement. In the event of any conflict between this Agreement and any other settlement-related document, the Parties intend that this Agreement shall be controlling.

## XIII. CHOICE OF LAW/JURISDICTION

13.1 This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of New York, both in its procedural and substantive aspects, and shall be subject to the continuing jurisdiction of the United States District Court for the Southern District of New York. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

## XIV. VOIDING THE AGREEMENT

14.1 In the event this Agreement, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

| | |
|---|---|
| _____ | _____ |
| Laura C. Williams | Gregory K. McGillivary |
| The City of New York | Hillary D. LeBeau |
| Law Department | Chelsea M. Williams |
| 100 Church St., Room 2-102 | MCGILLIVARY STEELE ELKIN LLP |
| New York, NY 10007 | 1101 Vermont Ave., N.W. |
| | Suite 1000 |
| Dated: July 20, 2021 | Washington, DC  20005 |
| | |
| | Dated: July 20, 2021 |
| | |
| | _Hope Pordy_____ |
| | Hope Pordy |
| | Elizabeth Sprotzer |
| | SPIVAK LIPTON LLP |
| | 1700 Broadway |
| | Suite 2100 |
| | New York, N.Y 10019 |
| | |
| | Dated: July 20, 2021 |
| | |
| *Attorney for Defendant* | *Attorneys for Plaintiffs* |

EXHIBIT A

| REF ID | Last | First | Court File Date | RR Claim | UM Claim | Meal Claim 1.5 Hrs | Total | 90% LDS | TOTAL BP AND LDS |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Graham | Carl | 6/20/2019 | $ 627.79 | $ 7,414.45 | $ 5,621.78 | $ 13,664.01 | $ 12,297.61 | $ 25,961.63 |
| 2 | Mints | Genadiy | 6/20/2019 | $ 249.41 | $ 11,904.67 | $ 12,712.09 | $ 24,866.17 | $ 22,379.55 | $ 47,245.71 |
| 3 | Sparks | Devin | 6/20/2019 | $ 31.38 | $ 6,391.38 | $ 11,757.20 | $ 18,179.97 | $ 16,361.97 | $ 34,541.95 |
| 4 | Viera | Christopher | 7/29/2019 | $ 0.06 | $ 8,858.29 | $ 8,835.89 | $ 17,694.24 | $ 15,924.82 | $ 33,619.06 |
| **Total** | | | | **$ 908.64** | **$ 34,568.80** | **$ 38,926.95** | **$ 74,404.39** | **$ 66,963.95** | **$ 141,368.35** |